# United States Court of Appeals

## For the First Circuit

No. 08-2177

UNITED STATES OF AMERICA,

Appellee,

v.

JULIO CARTAGENA,
a/k/a Triste, a/k/a Joselín, a/k/a Charlie,
a/k/a Félix, a/k/a José Mejía,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, U.S. District Judge]

Before

Lynch, Chief Judge,
Torruella and Stahl, Circuit Judges.

Alan D. Rose, with whom Rose, Chinitz & Rose, was on brief for
appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with
whom Michael K. Loucks, Acting United States Attorney, were on
brief for appellee.

January 29, 2010

**TORRUELLA**, **Circuit Judge**. Defendant-Appellant Julio Cartagena ("Cartagena") pled guilty to participation in a drug-trafficking conspiracy involving the importation and distribution of heroin and cocaine along the east coast, including the Greater Boston area. Cartagena appeals the district court's denial of three motions concerning his suspected involvement in the conspiracy. First, Cartagena challenges the district court's denial of a motion to suppress evidence obtained from state and federal wiretaps, arguing that the affidavits submitted in support of the wiretap applications omitted material information and that had this information been included, the wiretap applications would have failed to satisfy the "necessity requirement" of both 18 U.S.C. § 2518(1)(c) and N.Y. Crim. Proc. Law §§ 700.15(4), 700.20(2)(d). Second, Cartagena appeals the denial of his request for a hearing under Franks v. Delaware, 438 U.S. 154 (1978). Third, Cartagena challenges the denial of his motion to compel the production of documents relevant to the motion to suppress, as well as the denial of his motion for an in camera inspection of the government agents' handwritten notes. After careful consideration of Cartagena's challenges, we affirm in all respects.

## I. Background

### A. Facts

This appeal concerns information obtained from drug trafficking investigations conducted by Drug Enforcement

Administration (DEA) agents operating in Boston, New York, and in Bogotá, Colombia, in collaboration with the Colombian National Police (CNP). The DEA focused its investigation on two individuals operating on the east coast, Luis López ("López") in New York and Cartagena in Boston. Special Agent Sean Canavan ("Canavan") was responsible for the investigation of López, and Special Agent Jean Drouin ("Drouin") was responsible for the investigation of Cartagena.

Canavan's New York investigation centered on information regarding López and his role in the distribution of the imported heroin to wholesalers on the eastern seaboard, including Boston. The DEA's investigation of López in New York was based on information provided by a confidential informant, Pablo Báez ("Báez"). Báez worked with the DEA as a paid informant several years earlier and had re-initiated contact with the DEA in December 2004, providing information concerning drug trafficking activity in New York.

In mid-May 2005, Báez began providing information about López's activities. The DEA registered Báez as an official "confidential source" on June 8, 2005. Báez signed a DEA Confidential Source Agreement (CSA) that authorized him to engage in certain activities as an informant. On June 20, 2005, the New York DEA, relying in part on information that Báez provided, applied for a warrant, pursuant to the New York state wiretap

statute, authorizing a wiretap on López's cellular telephone. The warrant was issued for a period of thirty days, commencing on June 22, 2005. The DEA discontinued the wiretap on July 11, 2005 because it appeared that López was using a different phone to conduct his drug-related conversations.

Báez continued to provide the DEA with information and surveillance opportunities until October 11, 2005. After that, he ceased contact with the DEA. On November 16, 2005, Canavan formally deactivated Báez as a confidential source.

While the New York DEA investigated López, Drouin and the Boston DEA conducted their separate investigation of Cartagena, whom agents believed to be a cocaine and heroin dealer in Massachusetts. During the course of the investigation, agents suspected López of being Cartagena's primary heroin supplier. Relying in part on information obtained from the New York investigation of López, Drouin applied for electronic surveillance on Cartagena's cellular telephone pursuant to Title III of the Omnibus Crime Control and Safe Streets Act of 1968.[1] The wiretap

---

[1] Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968 with the stated purpose of "(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." Gelbard v. United States, 408 U.S. 41, 48 (1972)(quoting S. Rep. No. 90-1097, at 66 (1968), as reprinted in 1968 U.S.C.C.A.N. 2153)(internal quotation marks omitted). Title III makes the use of wiretapping or electronic surveillance by law enforcement "an extraordinary investigative technique whose use 'is to be distinctly the exception - not the rule.'" United States v. López,

order named Cartagena, López, and several of their associates as targets. The warrant for Cartagena's phone was issued for the period of September 29, 2005 to October 14, 2005. The only substantive information included in the application that was derived from Báez's cooperation concerned López's role in the conspiracy. As of the application date, Báez had not provided the DEA with any information that specifically concerned Cartagena. The district court subsequently granted a wiretap for another phone used by Cartagena and also granted wiretaps for phones used by López.

### B. Proceedings Below

Based on information obtained from the investigation, a grand jury indicted Cartagena and eighteen other co-conspirators on November 13, 2006. Cartagena was charged with conspiracy to distribute heroin and cocaine, maintaining a place for drug purposes, and money laundering in violation of 21 U.S.C. § 846, 21 U.S.C. § 856(a)(1), and 18 U.S.C. § 1956(h), respectively. On August 30, 2006, Cartagena's co-defendant, the former informant Báez, filed a motion to suppress evidence gathered from New York and federal wiretaps, arguing that the wiretap affidavit was tainted by false and misleading statements and material omissions,

300 F.3d 46, 51 (1st Cir. 2002)(quoting United States v. Hoffman, 832 F.2d 1299, 1306 (1st Cir. 1987)). Thus, a law enforcement official seeking to use electronic surveillance must meet the specific requirements of Title III's comprehensive regulatory scheme.

and that the Government failed to meet the "necessity requirement" of the state and federal statutes because less intrusive investigatory techniques were available. 18 U.S.C. § 2518(1)(c); N.Y. Crim. Proc. Law §§ 700.15(4), 700.20(2)(d). Báez also moved for an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978), to evaluate the alleged material omissions and false statements in the federal and state wiretaps. Cartagena and several other defendants joined Báez's motions.

The district court denied the motion to suppress as to both the state and federal wiretaps. Regarding the New York wiretap, the district court deemed the motion moot because the Government stated it would not offer evidence obtained from the New York wiretap, and further, no information obtained from that wiretap had been used in the federal wiretap application. United States v. López, No. 05-10304-GAO, 2007 WL 4556904, at *2 (D. Mass. December 12, 2007). Turning to the federal wiretap, the district court found that the facts set forth were "minimally adequate" to support a necessity determination and that the wiretap applications met the statutory requirements of § 2518(c). Id. at *6.

The district court briefly addressed the request for a Franks hearing, finding that there had not been a substantial preliminary showing that the affidavit omitted material facts knowingly and intentionally, or with reckless disregard for the truth. Id. Additionally, because none of the omitted facts would

have been material to a probable cause finding, the district court denied the request for a Franks hearing.  Id.

Separate from, but related to, the suppression and Franks motions, Cartagena moved to compel the production of documents relevant to his motions to suppress on November 16, 2006.  The magistrate judge denied the motion holding that, because Cartagena had not presented any evidence supporting his claim that material facts were omitted concerning other informants' activities or the scope of the information they could provide, the government was permitted to withhold the documents in order to shield the identities of its confidential informants.  Cartagena objected to the magistrate judge's ruling.  The district court affirmed the magistrate judge's denial of the motion.

On August 8, 2007, Cartagena filed another discovery motion for in camera inspection of handwritten notes of the Special Agents who prepared the Title III and New York wiretap affidavits. The district court denied the motion on December 12, 2007, holding that Cartagena's request for in camera review was not sufficiently particularized and focused.  Following the denial of his motions, Cartagena entered a conditional plea of guilty, reserving his right to appeal the denial of the motions to suppress, for a Franks hearing, and to compel discovery.  The district court then sentenced Cartagena to three consecutive 150 month terms.  This appeal followed.

## II. **Discussion**

### A. **Motion to Suppress Wiretaps**

#### 1. **Title III Wiretap**

Cartagena challenges the sufficiency of the government's showing of necessity pursuant to § 2518(1)(c) of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518.  Section 2518(1)(c) sets forth the necessity requirement. It requires that law enforcement officials applying to use electronic surveillance include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  Id.  In reviewing the government's showing of necessity, our role "is not to make a de novo determination of sufficiency as if [we] were [the issuing judge], but to decide if the facts set forth in the application were minimally adequate to support the determination that was made."  United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989)(quoting United States v. Scibelli, 549 F.2d 222, 226 (1st Cir. 1977))(internal quotation marks omitted).

To establish necessity, the government is not required to show that other investigative methods have been wholly unsuccessful, United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003), nor must the government exhaust all other investigative measures before resorting to wiretapping.  United

-8-

States v. Abou-Saada, 785 F.2d 1, 11 (1st Cir. 1986); see also López, 300 F.3d at 52. The government is only required to show that it has made "a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls." López, 300 F.3d at 52 (citing Hoffman, 832 F.2d at 1306-07).

Turning to the affidavit, we are satisfied that the application was "minimally adequate to support the determination that was made." Ashley, 876 F.2d 1074. The DEA Special Agent filed a fifty-nine-page affidavit that defined the goals of the government's investigation and supplied a detailed overview of the investigation to date. The affidavit listed specific reasons why traditional investigative methods used up to that point -- including informants, physical and video surveillance, controlled purchases and seizures of heroin, and pen register and toll analysis -- had not yielded sufficient information. It also provided thorough explanations as to why other traditional investigative techniques (e.g., physical surveillance, search warrants, grand jury subpoenas, telephone records and pen register data, trash searches, witness interviews, cooperating individuals, and undercover agents) were unlikely to be fruitful.

Cartagena argues that the affidavit in support of the wiretap contained material omissions and misleading and false statements that, if known to the judge, would have prevented a

finding of necessity. Cartagena contends that the government omitted material information concerning the extent of Báez's infiltration into the conspiracy, the frequency, nature, and scope of his communications with López, the activities he was authorized to perform, and the quality of information he had provided to the government.[2] He also alleges that the government made false statements by creating the impression that Báez had only been able to provide the most general information about the drug enterprise. Lastly, Cartagena argues that the government omitted material information that would have established that traditional investigative procedures were producing some results for the government. Had this information been included, says Cartagena, the issuing court would not have been able to find that a federal wiretap was necessary, requiring the government to continue pursuing less intrusive investigative techniques. Cartagena's arguments are flawed for the following reasons.

Section 2518(1)(c)'s "full and complete statement" requirement does not mandate that officers include every single detail of an investigation, even if relevant to the need for a wiretap. <u>United States</u> v. <u>Yeje-Cabrera</u>, 430 F.3d 1, 9-10 (1st Cir.

---

[2] Cartagena additionally argues, regarding both the state and federal wiretaps, that the government intentionally omitted an unconstitutional search of López's phone from the affidavits. Because we do not believe the information obtained from the search was used in support of the wiretaps, Cartagena's allegation is irrelevant to his necessity claim.

2005). Provided that sufficient facts are included supporting the need for a wiretap over other investigative procedures, the officer need not set forth the minutiae of an investigation. Id. Furthermore, "[t]here is no rule on the amount of time investigators must try and fail, using other methods, before turning to a wiretap application," United States v. Nelson-Rodríguez, 319 F.3d 12, 33 (1st Cir. 2003). Even if traditional investigative procedures produce some results, "the partial success of the investigation [does] not mean that there [is] nothing more to be done." United States v. Cao, 471 F.3d 1, 3 (1st Cir. 2006).

The government's affidavit made clear that although DEA agents had secured information through traditional investigative measures, their ability to continue obtaining actionable intelligence from such methods was limited.[3] We have never required the government to "run outlandish risks or to exhaust every conceivable alternative before seeking a wiretap," Hoffman, 832 F.2d at 1306, and we find no need to create such a requirement today. On deferential review, we are satisfied with the issuing court's determination that the facts provided were sufficient to

---

[3] Specifically, the affidavit provided that traditional law enforcement investigative techniques had failed to identify the smuggling locations to which the narcotics were transported, the exact method by which the conspirators imported the narcotics into the United States, the persons to whom Cartagena supplied the narcotics, the method by which the organization laundered its drug proceeds, or the full nature and scope of Cartagena's drug trafficking activities.

rise above the standard of minimal adequacy. See United States v. Rivera-Rosario, 300 F.3d 1, 19 (1st Cir. 2002) (necessity established where government described previously pursued techniques, stated why they were ineffective, and explained why other methods, including grand jury subpoenas and search warrants, were not viable options).

Furthermore, even if the affidavit had contained the information that Cartagena alleges was omitted or misstated, we find no reason to conclude that the inclusion of such information would have prevented the judge from deciding that a wiretap should be issued. In light of the large quantities of evidence from sources other than Báez, "if we excise (or otherwise appropriately adjust) all misleading statements from the affidavit, there is still a more than adequate showing of 'probable cause.' Thus any misstatements are immaterial." Nelson-Rodríguez, 319 F.3d at 34 (quoting United States v. Young, 877 F.2d 1099, 1102 (1st Cir. 1989) (Breyer, J.)). In this case, the affidavit contained information gathered from several other cooperating informants, video and physical surveillance, analysis of toll and phone records, analysis of pen registers, and seizures of heroin and cocaine. On these facts, we cannot say that the court erred in concluding that the omission or misstatement of information about Báez's informant activities did not provide grounds for

-12-

suppression.  We therefore affirm the district court's denial of Cartagena's motion to suppress.[4]

## 2. New York Wiretap

Cartagena also challenges the district court's denial of his motion to suppress evidence obtained from the New York wiretap. Cartagena argues, as with his Title III contentions, that the district court should have suppressed the fruits of the New York wiretap because the affidavit in support of the application omitted material information and contained misleading statements. However, upon reviewing the record, we agree with the district court that the government did not offer evidence obtained from the New York wiretap against Cartagena.  Further, we conclude that any evidence obtained from the New York wiretap that may have been used in the Title III wiretap affidavit was not material.  Cartagena has not

---

[4] Although we agree with the district court's decision to suppress the Title III wiretap, we briefly address its discussion of the necessity standard in order to provide clarification.  In applying Title's III's necessity requirement, the district court imposed two requirements that we have never demanded to establish necessity. First, the district court considered whether the informant in this case "was [] in a position to provide all the information that objectively reasonable investigators would want or need for a successful prosecution of the several people involved in the distribution network."  López, 2007 WL 4556904, at *4.  Nowhere does § 2518(1)(c) or this Court's jurisprudence require that we assess the wants or needs of the objectively reasonable investigator.  Second, the district court considered the evidentiary reliability of informant-provided information.  Id. at *5.  Again, the evidentiary reliability of an informant's testimony is not part of the necessity requirement under § 2518(1)(c).  In evaluating necessity, a court need only consider whether other investigatory procedures have been tried and failed or if they would be unlikely to succeed if pursued.

demonstrated otherwise.  Thus, we affirm the district court's denial of Cartagena's motion to suppress the fruits of the New York wiretap as moot.

### B. **Franks** Hearing

Cartagena additionally argues that the case should be remanded for an evidentiary hearing so that his allegations of alleged omissions and false statements in the federal and state wiretap affidavits may be evaluated.  To obtain such an evidentiary hearing, the defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause."  Franks, 438 U.S. at 155-56.  Provided the defendant makes the requisite showing, a Franks hearing may be held to address allegations of both material omissions as well as false statements.  Nelson-Rodríguez, 319 F.3d at 34.  A district court's finding that the requisite showing for a Franks hearing has not been made will be overturned only if it is clearly erroneous.  Rivera-Rosario, 300 F.3d at 20.

We find no clear error in the district court's denial of a Franks hearing.  First, and as set forth above, we agree with the district court that Cartagena failed to make a substantial preliminary showing that the wiretap applications suffered from knowingly or recklessly made material omissions or false

-14-

statements.  See, e.g., id. (denial of Franks hearing upheld where defendant failed to show that alleged omission of information regarding a cooperating witness, who had some information concerning the government's targets, was sufficiently material to warrant evidentiary hearing where that information was immaterial to the charges against defendant).  Second, and as previously set forth, even if Cartagena could meet this preliminary showing, he has failed to show that absent the false information, or including the omitted information, the affidavit contained insufficient evidence to support a finding of probable cause.  See, e.g., Nelson-Rodríguez, 319 F.3d at 34 (denial of Franks hearing upheld where defendant failed to show that alleged omissions were necessary to the issuing judge's finding of probable cause for wiretap).  The preliminary showing for a Franks hearing requires that both of these elements be established.  Id. (citing United States v. Adams, 305 F.3d 30, 36 n.1 (1st Cir. 2002)).  Cartagena has established neither, and we thus affirm the district court's denial of a Franks hearing.

**C. Discovery Motions**

Cartagena's final argument on appeal is that the district court abused its discretion in denying his discovery motions.[5]  We review the district court's denial of discovery motions for abuse

---

[5]  Cartagena moved for discovery pursuant to Rule 116.2(A) of the Local Rules of the District of Massachusetts.

of discretion.  <u>United States</u> v. <u>Bucci</u>, 582 F.3d 108, 113 (1st Cir. 2009).

Cartagena's first discovery motion sought disclosure of information on the confidential informants identified in the wiretap affidavits.  It is well-established that the government has a "privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."  <u>Roviaro</u> v. <u>United States</u>, 353 U.S. 53, 59 (1957).  This privilege is not absolute.  "Where the disclosure of an informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."  <u>Id.</u> at 60-61.

Cartagena bears the "heavy" burden of showing that disclosure is necessary in raising his defense.  <u>United States</u> v. <u>Lewis</u>, 40 F.3d 1325, 1335 (1st Cir. 1994)(citations omitted); <u>see also</u> <u>United States</u> v. <u>Robinson</u>, 144 F.3d 104, 106 (1st Cir. 1998).  Cartagena's argument, based entirely on speculation, falls far short of meeting this burden.  Cartagena's claim is limited to arguing that communications concerning the other informants could have provided important exculpatory evidence that would have corroborated his subjective belief that the government omitted material information from the wiretap affidavits.  Specifically, Cartagena contends that if the government made material omissions

-16-

in the affidavits concerning Báez, it also could have omitted information as to the other four informants, entitling him to discovery. Cartagena offers no evidence nor points to any facts to support this contention.

Cartagena further argues that he is only seeking the contents of the informants' conversations, not their actual identities. The government asserted below that disclosure of the informants' communications would effectively disclose their identities and put them at risk because of the specific context in which the communications were made. Roviaro makes clear that, if disclosure of a communication's contents will also tend to reveal an informant's identity, the contents are also privileged. 353 U.S. at 60; see also United States v. Tzannos, 460 F.3d 128, 140 (1st Cir. 2006)(holding that the privilege "extends to information that would tend to reveal the identity of the informant")(quoting United States v. Napier, 436 F.3d 1133, 1136 (9th Cir. 2006)). Cartagena offers no facts to dispute the government's assertion, nor does he point to any evidence that would allow us to plausibly infer that the contents should not be deemed privileged.

Lastly, at no point in his argument does Cartagena raise facts or offer evidence showing that the other informants were either active participants, supporting his claim for disclosure, or

mere tipsters whose disclosure is "vital to a fair trial."[6]  Lewis, 40 F.3d at 1335 (explaining that a mere tipster will generally deserve anonymity unless an exceptional case is presented showing that disclosure is "vital to a fair trial.").  This is particularly relevant in this case because at the suppression stage, the defendant's interest in disclosure, weighed against the government's interest in protecting the informant's confidentiality, is of a lesser magnitude than at the trial stage. Tzannos, 460 F.3d at 140 (citing United States v. Raddatz, 447 U.S. 667, 679 (1980)); see also McCray v. Illinois, 386 U.S. 300, 312 (1967)(informant's identity need not always be disclosed at trial, "let alone in a preliminary hearing to determine probable cause" for a search).

Disclosure is only proper if Cartagena shows us "concrete circumstances that might justify overriding both the public interest in encouraging the flow of information, and the informant's private interest in his or her own safety."  Tzannos, 460 F.3d at 139 (citation omitted).  Cartagena fails to point us to concrete facts that would support the conclusion that disclosure

---

[6]  A "mere tipster" is one who "neither participated in nor witnessed the events that inculpated the defendant and led to his arrest," or "who does little more than put a flea in an officer's ear."  Robinson, 144 F.3d at 106-07; see also United States v. Martínez, 922 F.2d 914, 921 (1st Cir. 1991)("[W]here the informant is a mere tipster, a conduit rather than a principal or active participant in the enterprise, disclosure is not required, even in those instances where the informant was present during the commission of the offense.").

would have aided his defense.  Such speculation is not enough to overcome the government's privilege.  See, e.g., Martínez, 922 F.2d at 921 ("Mere speculation as to the usefulness of the informant's testimony, it must be emphasized, is insufficient to justify disclosure of his or her identity. . . .").  We therefore hold that the district court did not abuse its discretion in refusing to require the government to produce documents containing identifying information as to the other informants.[7]

Cartagena's second discovery motion requested the court's in camera inspection of all handwritten notes taken by the two DEA agents who prepared the Title III and New York wiretap affidavits.  Similar to his document production motion, Cartagena argues that because the DEA agents may have omitted material information as to Báez's role as an informant, "the Government may well have omitted information with respect to the other informants in the case."  As the district court aptly noted, however, Cartagena never asserts that the agents' notes contain specific information that is potentially exculpatory or material to his defense; he only asserts that they might.[8]

---

[7]  Based on our review of the record, it does not appear that Cartagena sought in camera inspection of these communications at the district court level, and Cartagena does not allege doing so.

[8]  The district court cases on which Cartagena relies to support his speculative proposition do not assist him.  For example, in United States v. Henderson, the requested information "was material to the merits of the Motion to Suppress," not possibly material. 265 F. Supp. 2d 115, 116 (D. Mass. 2002)(emphasis added).  In

-19-

In the absence of a specific reference or "particularized and focused request" for potentially exculpatory evidence, we hold that the district court did not abuse its discretion in denying <u>in camera</u> review of the DEA agents' notes.[9]  <u>See</u> <u>United States</u> v. <u>Caro-Muñiz</u>, 406 F.3d 22, 30 (1st Cir. 2005)(upholding denial of <u>in camera</u> review where defendant submitted that seventy-one tape recordings "may" contain exculpatory evidence).

**<u>Affirmed</u>**.

---

<u>United States</u> v. <u>Ramos</u>, the defendant made a particularized demand, requesting disclosure of an informant's name, residential address, telephone number, criminal record, and any cases pending against him.  210 F. Supp. 2d 1, 2 (D. Mass. 2002).  Here, Cartagena has requested all of the DEA agents' handwritten notes, totaling hundreds of pages, with no further specifications or identifications.  Thus, his situation cannot reasonably be compared to that of the defendant in either case.

[9]  Because Cartagena has provided us with no "indication that the materials to which he . . . needs access contain material and potentially exculpatory evidence," <u>United States</u> v. <u>Brandon</u>, 17 F.3d 409, 456 (1st Cir. 1994), there is no <u>Brady</u> claim pursuant to <u>Brady</u> v. <u>Maryland</u>, 373 U.S. 83 (1963).  <u>Compare</u> <u>United States</u> v. <u>Duval</u>, 496 F.3d 64, 75 (1st Cir. 2007)(defendants' theory that additional exculpatory evidence could exist in informant payment records, fostered by government's pattern of non-disclosure, deemed to be a "shot in the dark" insufficient to require <u>in camera</u> review), <u>with</u> <u>United States</u> v. <u>Rosario-Peralta</u>, 175 F.3d 48 (1st Cir. 1999)(disclosure granted where defendants made clear showing that sought evidence existed and would support validity of their defense theory).