**UNITED STATES of America**

v.

**Michael OSTROWSKI, Defendant.**

**No. 10–cr–30024–MAP.**

United States District Court,
D. Massachusetts.

Oct. 26, 2011.

R. Bradford Bailey, Charles E. Dolan, Denner Pellegrino LLP, Boston, MA, for Defendant.

Steven H. Breslow, United States Attorney's Office, Springfield, MA, for United States of America.

***MEMORANDUM AND ORDER REGARDING DEFENDANT'S MOTION TO SUPPRESS SEARCH WARRANT* (Dkt. No. 31)**

PONSOR, District Judge.

## I. *INTRODUCTION*

On June 10, 2010, Defendant, Michael Ostrowski, was indicted for conspiracy to commit mail fraud (18 U.S.C. § 371); three counts of mail fraud (18 U.S.C. § 1341); interstate transportation of stolen property (18 U.S.C. § 2314); receipt, possession, concealment, and disposition of stolen property having crossed a state boundary (18 U.S.C. § 2315); two counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957(a)); and willful failure to file a tax return (26 U.S.C. § 7203). He now moves to suppress evidence seized during a search of his home on June 26, 2008. He further requests that statements he made during that search also be suppressed under the "fruit of the poisonous tree" doctrine. *Wong Sun v. United States,* 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). In the alternative, Defendant requests an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). For the reasons stated below, Defendant's motion will be denied.

## II. *FACTS*

### A. *Defendant's Temporary Guardianship.*

In June 2006, Defendant's grandfather, Stanley Ostrowski ("Stanley"), was admitted to Franklin County Medical Center ("FCMC") for a mental health evaluation. The evaluation determined that Stanley required full-time care and a legal guardian. Stanley was transferred to a nursing home, while the Franklin County Probate and Family Court ("family court") appointed Defendant to be Stanley's temporary guardian. FCMC's legal representative, Marilyn Schmidt, advised Defendant that, as Stanley's guardian, he was responsible for Stanley's finances and medical care. She further advised him that Stanley's wife, Helen Ostrowski ("Helen"), was entitled to a portion of Stanley's financial assets, that Defendant was entitled to reasonable compensation for his services as guardian, and that the remainder of the assets should be used for Stanley's care.

Defendant was required to file an inventory of Stanley's property with the family court as of the date of his guardianship appointment. The inventory Defendant filed listed $65,500.00 in real property and $344,507.44 in personal property, including a Greenfield Savings Bank Money Market account ("GSB account") containing $56,845.77, a Greenfield Savings Bank Cer-

tificate of Deposit account ("CD account") containing $252,851.22, and a Bank of Western Massachusetts Savings account ("BWM account") containing $25,910.45.

By October 2006, Schmidt began to have concerns about Defendant's management of Stanley's financial assets and asked the family court to appoint a guardian ad litem to investigate. In February 2007, the guardian ad litem filed a report with the family court on Defendant's guardianship, concluding that Defendant was an unsuitable guardian.

Pursuant to this report, the family court removed Defendant as temporary guardian on March 5, 2007, ordered him to turn over any of Stanley's assets still in Defendant's possession, and froze Stanley's bank accounts. After being removed as guardian, Defendant filed his First and Final Accounting with the family court on May 1, 2007. The accounting listed charges made by Defendant as Stanley's guardian totaling $353,260.69, a sum nearly equal to the money Stanley possessed at the beginning of Defendant's tenure, including income Stanley earned during the tenure in the form of Social Security payments and pension. Later that year, the Internal Revenue Service ("IRS") began an investigation into Defendant's management of Stanley's assets.

**B. Search Warrant.**

As a result of the investigation, the IRS applied for, and was granted, a warrant to search Defendant's home at 55 Stephano Road, East Patchogue, New York ("the subject premises") (Dkt. No. 32, Ex. 1, Search Warrant). The search warrant permitted agents to seize nearly all business or financial records belonging to Defendant, his wife, his father, or his grandparents for the period from January 1, 2006, until the present. These records included anything relating to "business, fi-

nancial and accounting activities," "the purchase and use of assets," bank loans, capital improvements, certificates of deposit, federal or state income tax and employment returns, and any interest held in real property. (*Id.* at 4–5.) The warrant also authorized seizure of over $1,000 in currency, "personal property purchased with funds belonging to Stanley Ostrowski," and electronic devices containing information that fell into any of the aforementioned categories. (*Id.*)

The warrant was based on an affidavit submitted by Special Agent Gregory Howe of the Criminal Investigations unit of the IRS ("the affidavit") (Dkt. No. 32, Ex. 2, Search Warrant Aff.), who subsequently conducted the search.

**C. Agent Howe's Affidavit.**

The affidavit alleged that Defendant conspired with his wife, Francesca Ostrowski ("Francesca"), and his father, David Ostrowski ("David"), to improperly spend Stanley's money, thus forcing the Commonwealth of Massachusetts to pay for Stanley's medical care. Furthermore, according to the affidavit, Defendant took funds from Stanley as payment for his services as guardian, but failed to file tax returns to declare the payments as income.

The affidavit listed a long series of purchases Defendant made with funds from Stanley's GSB account and BWM account, including vehicle repairs, medical bills, a flat-screen television, and a truck. According to the affidavit, both bank accounts named the subject premises as the address for the account holder and the majority of purchases were made at businesses or for services near the subject premises. Defendant made most of the purchases by check, listing "Guardian Pay" or "Guardian Fee" in the memo line. (Dkt. No. 32, Ex. 2, Search Warrant Aff. ¶¶ 25–43.) The following is a summary of the

most significant purchases, as alleged in the affidavit:

1) On September 19, 2006, Defendant wrote a check from Stanley's BWM account to P.C. Richards for $1,629.33. The memo line read "TV." The store invoice listed "Fraccesca [sic] Ostrowski" as the customer and the subject premises as her address. (*Id.* ¶ 42.)

2) Defendant wrote a check on September 25, 2006, from the BWM account to Cassel GMC for $1,000. The memo line read "Truck." The following day, Defendant wrote a second check from the BWM account to Cassel GMC for $36,081.00. According to a store invoice, Defendant's father, David Ostrowski, purchased a 2006 GMC Pickup Truck from Cassel GMC with a $1,000 deposit and $36,081.00 cash on delivery. The invoice listed the subject premises, Defendant's home, as David's address and, according to Agent Howe, David had a 2006 GMC Pickup Truck registered to him at the subject premises. (*Id.* ¶ 43.)

3) Between September 18, 2006, and February 08, 2007, Defendant also wrote several checks from the BWM and GSB accounts to an American Express account belonging to his wife, Francesca. The address associated with the American Express account was the subject premises. The payments to the American Express account totaled $8,635.46. (*Id.* ¶ 41.)

The affidavit further alleged that on August 28, 2006, Defendant obtained a typed waiver from Stanley's wife, Helen, and his son, William Ostrowski. The waiver allowed Defendant to give Stanley's entire CD account to David. The following day, David closed the CD account, then worth $251,559.25. David received the funds in the form of a bank check, but returned several days later to exchange the check for cash.[1]

## III. *DISCUSSION*

Defendant argues for suppression of all items seized and statements made during the June 26, 2008, search because: (1) the search warrant failed to describe with sufficient particularity the place to be searched and the items to be seized; (2) the information in the affidavit supporting the warrant was impermissibly stale; (3) there was no probable cause to issue a search warrant because the affidavit failed to demonstrate sufficient nexus to the place to be searched; and (4) the good faith exception to the exclusionary rule did not apply. This court disagrees.

### A. *Particularity.*

The court will address Defendant's strongest argument—particularity—first. To be valid under the Fourth Amendment, a search warrant must describe "particularly . . . the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Defendant argues that the warrant in this case violated the particularity requirement because its terms gave the executing officers unfettered discretion and would justify seizure of almost every document in the Ostrowski household.

■ While the search warrant in this case was undoubtedly general, general warrants are permitted "when the surrounding circumstances render it reasonable." *United States v. Morris*, 977 F.2d 677, 681 (1st Cir.1992). When the items to be seized are business or financial records, as they are in this case, the First Circuit has adopted an "all records" rule:

---

1. During the search of Defendant's home, agents seized $179,500 in cash, secured with straps from Greenfield Savings Bank, along with a handwritten ledger detailing how Defendant and his father spent the remaining amount.

We hold that where there is probable cause to find that there exists a pervasive scheme to defraud, all the business records of an enterprise may be seized, if they are ... accurately described so that the executing officers have no need to exercise their own judgment as to what should be seized.

*United States v. Brien,* 617 F.2d 299, 309 (1st Cir.1980). Under this rule, courts have permitted "all records" searches of individuals' homes when the categories of records to be seized are "plausibly related to the crime" set out in the warrant. *United States v. Timpani,* 665 F.2d 1, 4–5 (1st Cir.1981) (upholding warrant that permitted seizure from the defendant's home of "any and all records relating to extortionate credit transactions"); *see also United States v. Falon,* 959 F.2d 1143, 1148 (1st Cir.1992) (upholding the seizure of "borrower's files," "lists of borrowers," and "correspondence, memoranda and documents 'relating to loans, loan guarantees, potential loans and potential loan guarantees'" because these items were plausibly related to Defendant's alleged loan fraud, but suppressing the seizure of other categories of items which "the warrant failed explicitly to limit ... to the subset directly linked to the alleged fraud").

██ In this case, Defendant's alleged fraud was sufficiently pervasive to justify a general "all records" search warrant. Indeed, the affidavit supporting the warrant provided ample evidence that Defendant's temporary guardianship of his grandfather was, as the government contends, permeated by fraud. According to the affidavit, Defendant inappropriately spent his grandfather's money throughout his tenure as temporary guardian and used the money for a variety of unrelated personal expenses, such as medical services, vehicle repairs, payments to American Express, the purchase of a truck, and the purchase of a television. Furthermore, Defendant allegedly withdrew large sums of cash from his grandfather's accounts that could have been used for any number of unidentified purchases, capital improvements, or other financial activities. In light of the ubiquitous nature of this alleged fraud, the seizure of vast quantities of varying types of business and financial records from Defendant's home pursuant to a relatively general search warrant was appropriate.

Of course, as courts have recognized, even pervasive fraud cannot justify seizure of every record from an individual's home. *See Falon,* 959 F.2d at 1148 ("[W]hen an individual's allegedly fraudulent business activities are centered in his home ... the 'all records' doctrine must be applied with caution .... [I]t would require extraordinary proof to demonstrate that an individual's entire life is consumed by fraud and that *all* records found in the home were subject to seizure." (emphasis in original)). It may well have been a plain violation of the Fourth Amendment's particularity requirement in this case to seize, for example, personal medical records, family photo albums, or personal correspondences. The search warrant at issue, however, is strictly limited to records of a business or financial nature that were "plausibly related" to the alleged fraud and tax evasion. In addition, the time limitation in the warrant—permitting seizure of items only from January 1, 2006, to the present—further limited the search to only those items that could have been related to Defendant's alleged crimes.

Considering these limitations as well as the pervasive nature of Defendant's alleged crimes, the court must conclude that the search warrant was sufficiently particular to satisfy the Fourth Amendment.

## B. *Staleness.*

██ Defendant next argues that the information in the affidavit was impermis-

sibly stale. Again, this court disagrees. "[A]n affidavit supporting a search warrant must contain timely information or else it will fail...." *United States v. Schaefer*, 87 F.3d 562, 568 (1st Cir.1996). However, the number of days elapsed between the date to which the collected information refers and the warrant application is not conclusive.

> [A] number of integers must be factored into the calculus—e.g., the nature of the information, the nature and characteristics of the supposed criminal activity, the nature and characteristics of the place to be searched, the nature of the items delineated in the warrant—and the likely endurance of the information must be gauged on that basis.

*Id.*

■ Here, the warrant sought evidence of alleged criminal activity that occurred between one and two years prior to the issuance of the warrant in the form of business and financial records, cash, and personal property. Business and financial records tend to defy claims of staleness. *See, e.g., United States v. Procopio*, 88 F.3d 21, 26 (1st Cir.1996) ("[T]he fact that the robbery had taken place many months in the past did not eliminate the likelihood that the paper trail of financial records could be found in Kiley's residence."); *United States v. Derman*, 23 F.Supp.2d 95, 99 (D.Mass.1998) ("[E]ven if the last transaction of the conspiracy occurred with the May 1994 check, a 'paper trail' of evidence of the conspiracy was likely to be found in one of [defendant's] four properties in December 1995.").

The other items seized also fall outside Defendant's staleness argument. As the affidavit itself explains, it was reasonable to expect that large items purchased using cash—including a flat screen television—would be found at Defendant's residence long after they were purchased. Further-more, considering the large amount of cash Defendant and his father allegedly withdrew from Stanley's CD account, it was reasonable to expect that at least some of that cash would still be at Defendant's residence even two years after the withdrawal. As such, despite the passage of nearly sixteen months between the end of Defendant's temporary guardianship and the issuance of the search warrant, the information within the affidavit remained timely.

## C. *Nexus.*

■ Defendant also challenges the finding of probable cause. For the issuance of a warrant to be valid under the Fourth Amendment, there must be "probable cause to believe that (1) a crime has been committed—the 'commission' element, and (2) enumerated evidence of the offense will be found at the place to be searched—the so-called 'nexus' element." *United States v. Woodbury*, 511 F.3d 93, 97 (1st Cir.2007) (internal citation omitted).

Defendant argues that the affidavit contained little evidence to link the subject premises with the evidence sought to be seized, and thus failed to meet the nexus element. Specifically, Defendant argues that the nexus between the subject premises and the 2006 GMC Truck and the funds taken from Stanley's CD account was insufficient. Defendant contends that it was David, not the Defendant, who purchased the truck and withdrew funds from the CD account, and no evidence suggests that David resided at the subject premises. On the contrary, according to Defendant, many members of Defendant's extended family have explained that David did not live with Defendant and that he purposefully kept his residence secret from his family. This argument fails for several reasons.

■ First, the affidavit contained sufficient evidence that David likely resided at the subject premises to support a finding of probable cause under the totality of the circumstances. *See United States v. Beckett*, 321 F.3d 26, 31 (1st Cir.2003) ("In determining the sufficiency of an affidavit supporting a search warrant, we consider whether the 'totality of the circumstances' stated in the affidavit demonstrates probable cause to search the premises." (quoting *United States v. Khounsavanh*, 113 F.3d 279, 283 (1st Cir.1997))). The invoice for the GMC Truck listed the subject premises as David's address and the truck was registered to David at the subject premises.

Second, the affidavit provided ample nexus between the subject premises and the remaining evidence sought to be obtained, all of which was linked directly to Defendant and his wife, Francesca, who undisputedly resided at the subject premises. For example, the majority of the expenses paid with funds from Stanley's bank accounts were for goods and services located near the subject premises; the subject premises was the address associated with Stanley's bank accounts; and the subject premises was the address associated with Francesca's American Express account to which funds from Stanley's account were transferred. Furthermore, Agent Howe testified in the affidavit that, based on his training, experience, and his knowledge of the case, individuals involved in financial crimes are likely to keep such records and items in their residences. (Dkt. No. 32, Ex. 2, Search Warrant Aff., ¶¶ 42, 80.) Agent Howe's testimony combined with the numerous records linking bank accounts and purchases to the subject premises was enough to support a finding of probable cause.

## D. *Good Faith.*

■ Even if the court has been too generous to the government in its analysis of Defendant's particularity argument, the good faith exception to the exclusionary rule would be fatal to Defendant's motion to suppress. *See United States v. Leon*, 468 U.S. 897, 906, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). The *Leon* good faith exception prevents suppression of evidence seized pursuant to a warrant later found to be deficient unless the Magistrate Judge "was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *Id.* at 923, 104 S.Ct. 3405 (internal citation omitted).

■ Here, there is absolutely no evidence of bad faith on the part of the agents. Defendant argues that Agent Howe exhibited a reckless disregard for the truth when he assumed that David lived at the subject premises. It is doubtful, however, that Agent Howe's assumption was a mistake at all. Indeed, Defendant has offered no proof that David did *not* reside at the subject premises. Even if Agent Howe were mistaken about David's place of residence, his assumption was reasonable and does not rise to the level of "reckless disregard" considering that the invoice for the GMC Truck and the truck registration both listed the subject premises as David's residence. Although Agent Howe could have investigated the issue further by questioning Defendant's family, as Defendant suggests, his failure to do so is at most "negligence, mistake, or inattention to detail" and, as such, "does not deprive the government of the benefits of the *Leon* exception." *United States v. Capozzi*, 347 F.3d 327, 332 (1st Cir.2003).

Finally, Defendant has offered no evidence that Agent Howe had any doubts about the truth of his assertion, as required for a showing of reckless disregard.

*United States v. Ranney*, 298 F.3d 74, 78 (1st Cir.2002) (holding that the defendant must prove that the affiant "in fact entertained serious doubts as to the truth" of the allegations to show reckless disregard for the truth (quoting *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984))). In light of all this, the *Leon* good faith exception would manifestly apply to this case to cure potential deficiencies, if any, in the search warrant.

### E. *Franks Hearing.*

█ Defendant's request for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), will also be denied. To obtain a *Franks* hearing, the defendant must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [that] the allegedly false statement is necessary to the finding of probable cause." *United States v. Cartagena*, 593 F.3d 104, 112 (1st Cir.2010) (quoting *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674). As discussed in the preceding section, Defendant has not come close to meeting his burden in this case.

### IV. *CONCLUSION*

For the foregoing reasons, Defendant's Motion to Suppress Search Warrant (Dkt. No. 31) is hereby DENIED.

It is So Ordered.