IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 12, 2014 Session

## STATE OF TENNESSEE v. CHRISTOPHER BRIAN DARNELL

**Appeal from the Criminal Court for Davidson County**
**No. 2011-C-2405     Cheryl Blackburn, Judge**

_____

**No. M2013-02540-CCA-R3-CD - Filed November 20, 2014**

_____

In this appeal pursuant to Rule 37 of the Tennessee Rules of Criminal Procedure, the defendant, Christopher Brian Darnell, appeals two certified questions of law that arose from the trial court's denial of his motion to suppress the evidence obtained via wiretapping: (1) whether the State provided the defendant with timely and adequate notice that his cellular telephone communications had been intercepted by law enforcement officers and (2) whether the State failed to show the required necessity in its application to monitor the defendant's telephone communications. Discerning no error, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Judgments of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and D. KELLY THOMAS, JR., JJ., joined.

Jonathan L. Miley (on appeal); and Nicholas McGregor (at hearing), Nashville, Tennessee, for the appellant, Christopher Brian Darnell.

Robert E. Cooper, Jr., Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Victor S. Johnson III, District Attorney General; and John Zimmerman, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Originally charged via a 15-count indictment along with as many as 15 co-conspirators with one count of conspiracy to possess with intent to sell over 300 grams of methamphetamine in a drug-free school zone; one count of conspiracy to possess with intent to deliver not less than 10 pounds and one gram nor more than 70 pounds of marijuana in a drug-free school zone; one count of conspiracy to obtain controlled substances by fraud;

three counts of possession with intent to sell .5 grams or more of methamphetamine; one count of possession with intent to sell 26 grams or more of methamphetamine; and one count of possession with intent to sell not less than one-half ounce nor more than 10 pounds of marijuana, the defendant pleaded guilty on October 21, 2013, to one count of conspiracy to sell more than 300 grams of methamphetamine; two counts of possession with intent to sell more than .5 grams of methamphetamine; and one count of possession with intent to sell more than 26 grams of methamphetamine.

At the guilty plea submission hearing, the State provided, and the defendant agreed to, the following summary of the facts:

> [I]f the State's witnesses were called to testify . . . they would testify . . . that between July of 2011 and December of 2011 police uncovered and discovered a methamphetamine distribution network throughout Middle Tennessee that was headed up by the defendant, Christopher Darnell. During the period of time during the conspiracy police were conducting court authorized wiretap interceptions on phones of the defendant and some other . . . coconspirators they were able to conclude from the wiretap and intercepted conversations that the defendant was a source of methamphetamine throughout Middle Tennessee, that from time to time he would travel to Atlanta, Georgia to acquire the methamphetamine. He would do this through rented vehicles. The defendant's network of distributors is set forth in the Count 1 of the overt acts. Of those individuals identified there they would be fronted the methamphetamine by the defendant. They would later redistribute the methamphetamine to others, some through nightclubs here in Davidson County and some through other contacts throughout Middle Tennessee. The amount of methamphetamine exceeded 300 grams during the period of this conspiracy.
>
> With regard to Count 4 . . . the wiretap intercept and personal surveillance of the defendant by investigators, including Detective Loucks, indicated that on July 22nd, 2011, the defendant was in possession of methamphetamine and caused it to be delivered to one of the coconspirators in this case.

As to count 5, on August the 9th the defendant was personally observed in possession or distributing methamphetamine as indicated on the wiretap. He indicated that he had it in his possession and was taking it to one of his distributors identified in Count 1 of the indictment.

With regard to Count 6 on December the 9th, 2011, based on the wiretap the police knew the defendant was traveling to Atlanta, Georgia to pick up another load of methamphetamine as well as another . . . liquid drug known as gamma hydroxybutyrate acid, which is commonly referred to as the date rape drug. The defendant was stopped on the interstate as he entered Davidson County. He had in his possession 240 grams of methamphetamine and a half gallon of the GHB, also known as the date rape drug.

In exchange for his plea of guilty, the defendant received an agreed sentence of 30 years' incarceration with a 35 percent release eligibility percentage, and the State agreed to dismiss the remaining charges against the defendant. In addition, both the State and the Court agreed that the defendant would be permitted to appeal two certified questions of law relative to the trial court's denial of his motion to suppress evidence obtained via court-sanctioned wiretaps on the defendant's various cellular and land-line telephones. *See* Tenn. R. Crim. P. 37(b)(2)(A). The trial court incorporated by reference in the judgment form an order specifying the two questions and memorializing the agreement of the court and the parties that the questions were dispositive of the case against the defendant. *See id.* Despite the prolixity of the stated questions, the defendant raises two straightforward challenges to the use of evidence obtained via wiretaps in this case: (1) Did the State make the required showing of necessity in its application for the wiretaps? and (2) Did the State's failure to provide the statutorily required notice and inventory to the defendant after the conclusion of the wiretaps mandate suppression of evidence obtained via those wiretaps?

At the hearing on the defendant's motion to suppress, Metropolitan Police Department Detective William Loucks testified that the police began intercepting communications from telephone number 615-589-5587 on August 1, 2011. The defendant was arrested on December 9, 2011, when the defendant "was on his route back from the Atlanta, Georgia area with a large amount of crystal methamphetamine. He was intercepted at the county line." Between August 1, 2011, and December 9, 2011, the police intercepted communications from six different telephone numbers used by the defendant. Detective Loucks identified a table, which was exhibited to the hearing by the State, that listed each telephone number along with the start and termination dates for the wiretaps related to each

number. That table provided the following information:

| Telephone | Carrier | Start | Termination | Extension |
|---|---|---|---|---|
| 615-589-5587 | Cricket | 8-1-2011 | 8-29-2011 | 11-16-2011 |
| 615-669-8732 | Google | 8-19-2011 | 12-12-2011 | |
| 615-752-8727 | Sprint | 8-30-2011 | 10-29-2011 | 11-16-2011 |
| 615-200-3327 | Sprint | 10-07-2011 | 12-01-2011 | |
| 404-213-6026 | AT&T | 11-01-2011 | 12-01-2011 | |
| 404-931-8752 | Sprint | 11-15-2011 | 12-09-2011 | |

Detective Loucks testified that at the defendant's preliminary hearing, on December 21, 2011, Detective Loucks "provided redacted orders and the applications for the wiretaps minus . . . the names of the individuals whose telephones we were still up on a subsequent investigation . . . that spun off from" the defendant's case "as well as copies of the search warrants for all ten locations" to the defendant's attorney. He said that "all ten" of the search warrant applications contained "content of telephone calls, dates and times, what telephone number was intercepted, actual conversation that had been transcribed in the search warrants itself." Those materials, which comprised "approximately 150 plus pieces of paper" were provided to the defendant's attorney prior to the preliminary hearing in hard copy. A digital copy of those materials was exhibited to Detective Loucks's testimony. Detective Loucks said that later, notice went out to those whose conversations with the defendant were intercepted but who were not the target of the investigation. He explained, "It lets the individuals know that they were not target subject of the investigation but a phone either was in their name or somehow their name or identity was identified or developed throughout the phone conversations." He said that statutory notification was a one page document and that it was not provided to any of the arrested individuals, each of whom received the more comprehensive materials related to the wiretap.

During cross-examination, Detective Loucks stated that his investigation into the defendant began "[s]ometime around January of 2011" when he received information that the defendant was a potential methamphetamine distributor. He said that the wiretaps in this case were the result of "numerous investigations as well as numerous interviews conducted by individuals." Detective Loucks conceded that he provided the materials at issue to the defendant's attorney and not to the defendant.

At the State's urging, the defendant exhibited to the hearing a copy of the initial

wiretap application in this case.

At the conclusion of the hearing, the trial court took the defendant's motion under advisement and denied the motion via a later-filed written order. In that order, the trial court concluded that the State had "met its burden in showing the necessity of the wire surveillance in that it demonstrated that other methods of investigation failed or appear unlikely to succeed if tried." The trial court noted that "suppression was not a remedy for failure to receive notification where the defendant had received actual notice from the indictment and pretrial discovery papers" and observed that the "failure to comply with statutory notice requirements does not require suppression where the omission was inadvertent, particularly where the defendants were not prejudiced since they had received all applications, orders, and transcripts of the telephone calls as part of the pretrial discovery." The court specifically found that "the State provided timely actual notice of the interceptions to [the d]efendant."

## I. General Provisions

A trial court's factual findings on a motion to suppress are conclusive on appeal unless the evidence preponderates against them. *State v. Binette*, 33 S.W.3d 215, 217 (Tenn. 2000); *State v. Odom*, 928 S.W.2d 18, 23 (Tenn. 1996). Thus, questions of credibility, the weight and value of the evidence, and the resolution of conflicting evidence are matters entrusted to the trial judge, and this court must uphold a trial court's findings of fact unless the evidence in the record preponderates against them. *Odom*, 928 S.W.2d at 23; *see also* Tenn. R. App. P. 13(d). The application of the law to the facts, however, is reviewed de novo on appeal. *State v. Keith*, 978 S.W.2d 861, 864 (Tenn. 1998).

## III. Necessity

The defendant contends that the State failed to make the required showing of necessity in its applications for the wiretaps in this case, specifically claiming that the State failed to show that it had exhausted all other investigative techniques before seeking the wiretaps in this case.[1] The State asserts that the trial court correctly concluded that the State made the required showing.

---

[1] The defendant also makes a claim that the State failed to establish probable cause for the wiretaps. A challenge to the probable cause for the wiretaps was not a part of the certified questions, and, as such, it will not be addressed in this appeal. Moreover, the defendant raised no challenge to the probable cause in the trial court, and, as a result, cannot raise such a challenge on appeal. Finally, the defendant offered no argument or citation to authorities in support of his probable cause challenge.

State wiretapping law requires that the State establish, among other things, that resort to wiretapping is required because normal investigative techniques have either failed, would be unlikely to succeed if tried, or would be too dangerous to attempt. Tennessee Code Annotated section 40-6-304 provides:

> (a) Each application for an order authorizing the interception of a wire, oral or electronic communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction in the district where the interception of a wire, oral or electronic communication is to occur, or in any district where jurisdiction exists to prosecute the underlying offense to support an intercept order under § 40-6-305. The application shall state the investigative or law enforcement officer's authority to make the application and shall include the following information:
>
> . . . .
>
> (3) A full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;
>
> . . . .
>
> (c) Upon an application the judge may enter an ex parte order, as requested or as modified, authorizing interception of wire, oral or electronic communications within the district in which the judge is sitting, and outside that district but within the state of Tennessee in the case of a mobile interception device, if the judge determines on the basis of the facts submitted by the applicant that:
>
> . . . .
>
> (3) Normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . .

T.C.A. § 40-6-304(a)(3), (c)(3).

Because our statute "matches that in Title III of the Omnibus Crime Control and Safe Streets Act of 1968," this court has looked to federal cases "for guidance on the 'necessity requirement.'" *State v. Moore*, 309 S.W.3d 512, 525 (Tenn. Crim. App. 2009) (quoting *United States v. Carneiro*, 861 F.2d 1171, 1176 (9th Cir. 1988)). In *Moore*, we observed that the necessity requirement of our state statute, like its federal counterpart, "is 'simply designed to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *Moore*, 309 S.W.3d at 525 (quoting *United States v. Kahn*, 415 U.S. 143, 153 n.12 (1974)). The necessity requirement does not place upon the police a duty to "'exhaust every conceivable non-wiretap investigative technique,'" *Moore*, 309 S.W.3d at 525 (quoting *United States v. Lambert*, 771 F.2d 83, 91 (6th Cir. 1985)), and the State need not show that the wiretap was used as a "last resort," *Moore*, 309 S.W.3d at 526 (citing *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977)). Instead, "'[a]ll that is required is that the investigators give serious consideration to the non-wiretap techniques prior to applying for wiretap authority and that the court be informed of the reasons for the investigators' belief that such non-wiretap techniques have been or will likely be inadequate.'" *Moore*, 309 S.W.3d at 525 (quoting *Lambert*, 771 F.2d at 91): *see also United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984); *United States v. Webster*, 734 F.2d 1048, 1055 (5th Cir. 1984).

In this case, Detective Loucks's application for the wiretaps contained nearly 10 pages of discussion of a variety of investigative techniques and why those techniques had either been unsuccessful or would not be successful in this case. He noted that the use of physical or video surveillance, no matter how successful, would be unlikely to yield information regarding each individual's role within the drug conspiracy or the business practices within the conspiracy. He also observed that physical surveillance carries with it a risk of detection that could threaten the entire investigation. Detective Loucks stated that neither rolling nor stationary physical surveillance was feasible because the defendant's residence was located in an older residential neighborhood on a street not used by persons other than the residents of the neighborhood. Additionally, the detective learned from confidential sources that the defendant had a complex video surveillance system in place at his residence that included camera views of the street. Detective Loucks stated that officers had already used a number of confidential sources to obtain information about the drug conspiracy in this case and had essentially exhausted this resource. Detective Loucks also noted the rarity of any single confidential source who would be privy to the workings of the entire conspiracy.

Detective Loucks stated that neither the placement of an undercover officer nor direct questioning of those believed to be involved in a conspiracy was likely to yield success. He explained that no officers had the necessary experience at the time to infiltrate a drug organization of the size and scope of that headed by the defendant. Additionally, use

of an undercover officer could take years to produce results. Direct questioning, he said, was more likely to produce unreliable information because conspirators had no motivation to provide truthful answers. Search warrants, he said, were not practical given that the police were unsure of the scope of the conspiracy.

In our view, the comprehensive explanation of investigative techniques either tried without success or rejected as unlikely to yield success satisfied the statutory requirement of necessity. Detective Loucks need not have shown that the wiretaps were a last resort, only that the most common investigative techniques had either been tried or seriously considered before resort to the wiretap applications in this case. The application in this case easily met this requirement. In consequence, the trial court did not err by denying the defendant's motion on this ground.

### III. Statutory Notice

As indicated, the defendant claims that the State's failure to provide the statutorily required notice and inventory to the defendant upon the termination of the wiretaps mandates suppression of any evidence obtained from the wiretaps and of any evidence obtained via the search warrants, which, he claims, were granted based upon the use of information from the intercepted communications. The State argues that the documents provided to the defendant's counsel at the preliminary hearing satisfied the statutory requirement of notice. In the alternative, the State asserts that the failure to provide the statutory notice and inventory does not require suppression in this case because the defendant received actual notice.

State wiretapping law requires that notice and inventory of a wiretap be served on all individuals named in the wiretap application following the termination of the wiretap. Tennessee Code Annotated section 40-6-304(f)(4) provides:

> Within a reasonable time, but not later than ninety (90) days after the termination of an order of approval under subsections (c) and (d), or an order authorizing an extension under subsection (e), or the denial of an order under subsection (c), the issuing or denying judge shall cause an inventory to be served on the persons named in the order or application and any other parties to intercepted communications as determined by the judge exercising judicial discretion in the interest of justice. The inventory shall include notice of:
>
> (A) The fact of entry of the order or the application;

(B) The date of the entry and the period of authorized interception, or the denial of the application; and

(C) The fact that during the period wire, oral or electronic communications were or were not intercepted.

T.C.A. § 40-6-304(f)(4).

At the suppression hearing, Detective Loucks described the statutory notice routinely provided in cases such as this as a one-page document and conceded that the State did not provide such a document to the defendant within 90 days of the termination of the wiretaps. The detective explained, however, that he provided the defendant's counsel at the preliminary hearing with "redacted orders and the applications for the wiretaps minus . . . the names of the individuals whose telephones we were still up on a subsequent investigation . . . that spun off from" the defendant's case. He stated that the information was provided on hard copies but identified at the hearing a compact disc that contained the same information as that provided to the defendant. The defendant acknowledges in his brief that he received the statutorily required notice in May 2013.

The defendant claims, for the first time on appeal, that the information provided by Detective Loucks was insufficient to satisfy the requirements of Code section 40-6-304. He asserts that a "closer inspection" of the compact disc exhibited to the suppression hearing reveals that the documents provided by Detective Loucks consisted of only "a few Word documents that were not signed, entered or otherwise certified" and that the defendant "was greatly prejudiced" by having received such substandard notice. The defendant makes no claim regarding the hard copies provided to defense counsel at the time of the preliminary hearing. At the suppression hearing, the defendant claimed only that he had not received *any* notice of the wiretaps prior to May 2013, when he received the one-page statutory notice. The defendant's failure to specifically challenge in the trial court the sufficiency of the information provided to the defendant at the evidentiary hearing bars our consideration of that specific challenge on appeal. *See State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) ("Issues raised for the first time on appeal are considered waived."). Instead, we focus our analysis on the defendant's claim that he did not receive the statutorily required notice and inventory within the 90-day time frame contemplated by Code section 40-6-304.

For reasons more fully explained below, we need not determine whether the documents provided to the defendant's counsel at the preliminary hearing satisfy the statutory notice and inventory requirements because the record establishes that, because the defendant received actual notice of all the required information, he cannot establish that he was

-9-

prejudiced by the State's failure to timely deliver the formal statutory notice.

Again, because Code section 40-6-304(f)(4) tracks generally the corresponding provision in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, *see* 18 U.S.C.A. § 2518(8)(d)[2], we look to cases from the federal courts for guidance. *See Moore*, 309 S.W.3d at 525.

In *United States v. Giordano*, the Supreme Court, in a case involving a different section of the federal act, considered whether the failure to comply with the statutory requirements required suppression of evidence obtained via wiretaps. The court held that suppression was only required where the evidence established a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *United States v. Giordano*, 416 U.S. 505, 527 (1974). Utilizing this standard when considering the appropriate remedy for the government's failure to timely provide an inventory as required by the federal act, the Court observed that "[n]othing in the structure of the Act or [its] legislative history suggests that incriminating conversations are 'unlawfully intercepted'

---

[2] That section provides:

> Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of–
>
> > (1) the fact of the entry of the order or the application;
> >
> > (2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and
> >
> > (3) the fact that during the period wire, oral, or electronic communications were or were not intercepted.
>
> The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

whenever parties to those conversations do not receive discretionary inventory notice." *United States v. Donovan*, 429 U.S. 413, 438 (1977). In *Donovan*, the government had failed to inform the court issuing the wiretap orders of the identities of all parties to the conversations. As a result, some of the parties to the conversations did not receive an inventory notice. The Court concluded that where "the intercept had been completed and the conversations had been 'seized' under a valid intercept order," the failure to identify two of the "identifiable persons" did not, alone, render the conversations "unlawfully intercepted." *Id.* at 438-39. The court ultimately concluded "that postintercept notice was [not] intended to serve as an independent restraint on resort to the wiretap procedure." *Id.* at 439.

Those federal courts considering whether the failure to serve the notice and inventory required suppression of evidence obtained via wiretaps have concluded that suppression is only "an appropriate remedy when a defendant can show that the failure to serve an inventory notice caused him actual prejudice and that the prejudice which resulted cannot otherwise be cured." *United States v. Harrigan*, 557 F.2d 879, 884 (1st Cir. Mass. 1977); *see also United States v. Cirillo*, 499 F.2d 872 (2d Cir. 1974); *United States v. Iannelli*, 477 F.2d 999 (3d Cir. 1973), *aff'd on other grounds*, 420 U.S. 770 (1975); *United States v. Cafero*, 473 F.2d 489 (3d Cir. 1973); *United States v. Wolk*, 466 F.2d 1143 (8th Cir. 1972). The Eighth Circuit Court of Appeals observed in *Wolk*, "We do not believe that the use of formal inventories is an end unto itself. Surely neither the Congress nor the constitution would require such emphasis of form over substance as the appellees would have us promulgate." *Wolk*, 466 F.2d at 1146.

Importantly in this case, we are not confronted with a situation in which the State purposefully withheld the notice and inventory in order to gain a tactical advantage over the defendant. *Cf. United States v. Eastman*, 465 F.2d 1057, 1062 (holding that communications were unlawfully intercepted and suppression required where the notice and inventory provisions of the federal act "were deliberately and advertently not followed"). The defendant received the statutorily required notice in May 2013, more than 90 days after the conclusion of the last wiretap. Because the notice was untimely rather than "deliberately and advertently" withheld, suppression is not warranted unless the defendant can establish that he was prejudiced by the untimely notice.

The defendant claims that the untimely notice prohibited him from filing a motion to suppress the wiretap evidence prior to the preliminary hearing. The defendant's claim overlooks the fact that even if the "court opts to suppress evidence during a preliminary hearing, the ruling is limited in scope to the preliminary hearing" and "does not prohibit the State from presenting the contraband to the grand jury when seeking an indictment against the accused" and "is not binding upon the criminal court if the grand jury returns an indictment against the accused." *State v. Dixon*, 880 S.W.2d 696, 699 (Tenn. Crim. App.

-11-

1992). Following his indictment, the defendant filed a motion to suppress the evidence obtained via the wiretaps in the criminal court and was granted a full and fair hearing on his motion. Thus, his claim that the delayed formal notice in this case hampered his ability to file a pretrial motion to suppress is disingenuous, at best.

More importantly, however, the record establishes that the defendant was provided at the preliminary hearing with "redacted orders and the applications for the wiretaps" as well as ten search warrant applications, which applications contained "content of telephone calls, dates and times, what telephone number was intercepted, actual conversation that had been transcribed in the search warrants itself." These materials were provided less than two weeks from the last intercept and gave the defendant far more information than that required in a formal notice and inventory. Because the defendant had actual notice of all the relevant information, and more, he cannot establish that he was prejudiced by the untimely notice in this case. *See Donovan*, 429 U.S. at 439 n.26 (noting that defendants "were not prejudiced by their failure to receive postintercept notice" because "the Government made available to all defendants the intercept orders, applications, and related papers" and "produced transcripts of the intercepted conversations"); *see also People v. Hueston*, 312 N.E.2d 462, 465 (N.Y. 1974) ("[W]e do not believe any useful purpose would be served by a holding which hinged the admissibility of evidence upon a prosecutor's handing a formal written notification to a defense attorney who was already in possession of the information contained therein. Where actual knowledge of the existence of the warrant is demonstrated within the time period allowed for notification by the prosecution, such formal written notification becomes a ministerial act, and the failure to so notify does not require suppression of evidence.").

The defendant also appears to claim that because the discovery materials related to the wiretaps and search warrants were given to his counsel rather than to him personally, the provision of the discovery materials cannot qualify as actual notice. The law in this area is well settled. At the time of the preliminary hearing, the defendant's then-retained counsel was his agent, and, under the law, the defendant is considered to have "notice of all facts, notice of which can be charged upon [his] attorney." *Smith v. Ayer*, 101 U.S. 320, 326 (1880); *see also House v. State*, 911 S.W.2d 705, 706 (Tenn. 1995) ("[A] petitioner is bound by the action or inaction of his attorney."); *Gayoso Sav. Institute v. Fellows*, 46 Tenn. 467, 473 (1869) ("[N]otice to the attorney or agent . . . would be equivalent to the actual delivery of the instrument . . . ."). "Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent . . . ." *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962).

In summary, we hold that the trial court did not err by denying the defendant's

motion to suppress the evidence stemming from the wiretaps in this case because the defendant, who had actual notice of all the relevant information, did not establish that he was prejudiced by the State's failure to provide him with a timely, formal notice and inventory.

*Conclusion*

The wiretap application in this case clearly and sufficiently established the requisite necessity for the wiretaps in this case. Additionally, because the defendant received actual notice of all statutorily required information, he cannot establish that he was prejudiced by the untimely formal statutory notice. Accordingly, the judgment of the trial court denying the defendant's motion to suppress is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE