**UNITED STATES of America,
Plaintiff, Appellant,**

v.

**Bernard HARRIGAN, Defendant,
Appellee.**

**No. 75–1368.**

United States Court of Appeals,
First Circuit.

Argued Jan. 8, 1977.
Decided June 20, 1977.

---

882

John J. Klein, Atty., U. S. Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty., Stephen H. Jigger, Sp. Atty., Boston Strike Force, Boston, Mass., and Frederick W. Read, III, Atty., U. S. Dept. of Justice, Washington, D. C., were on brief, for appellant.

Thomas G. Shapiro, Boston, Mass., with whom Silverglate, Shapiro & Gertner, Boston, Mass., was on brief for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

■ Following the termination of a judicially authorized wiretap, the government has a statutory responsibility to inform the issuing judge of the identities of the persons whose conversations were overheard so that the judge may then decide who should receive notice of the interception pursuant to 18 U.S.C. § 2518(8)(d).[1] In *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), the Supreme Court held that § 2518(10)(a)[2] does not require the

suppression of the wiretap evidence when this duty is violated. In *Donovan* the Court left open the question whether special circumstances such as the intentional withholding of information as to the identities of persons overheard might justify exclusion of wiretap evidence as an appropriate remedy. In this appeal appellee claims such circumstances are present.

From June 1, 1971 to June 15, 1971, the government was authorized to intercept conversations over three Massachusetts telephone lines in connection with an investigation of an illegal gambling operation. Defendant-appellee, Bernard Harrigan, who had not been a target of the wiretap, was a party to several of the intercepted conversations. When the wiretap was completed, the district court, in order to avoid compromising the ongoing investigation, postponed the service of the statutory inventory notices until late November, 1971. On November 17, following the completion of the investigation, the government submitted a list to the district court purporting to contain the names and addresses of all persons who had been named in the wiretap order and application and of all persons whose conversations were known to have been intercepted. The district court ordered that the government serve an inventory notice on each of the 26 individuals whose names were disclosed. Although defendant's voice had been identifiable, his name did not appear on the list, and he was not served with the inventory notice. So far as the record shows, he was the only identifiable individual whose name was omitted from the list.

1. 18 U.S.C. § 2518(8)(d) provides:
    "Within a reasonable time but not later than ninety days after . . . the termination of the period of an order [authorizing a wiretap], the issuing . . . judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory that shall include notice of
    [(1) the fact of the entry of the order,
    (2) the date of the entry and the period of authorized interception, and
    (3) the fact that during the period wire or oral communications were intercepted.]

On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed."
"18 U.S.C." will hereafter be omitted from statutory citations.

2. Section 2518(10)(a) provides for the suppression of the wiretap evidence when (i) "the communication was unlawfully intercepted"; (ii) "the order of the authorization or approval under which it was intercepted is insufficient on its face"; or (iii) "the interception was not made in conformity with the order of authorization or approval."

On August 30, 1972, defendant was called before a grand jury that was investigating illegal gambling activity in the Boston area. He was asked questions concerning his acquaintances, his use of specific telephones, and his gambling activities. Apart from admitting that he was present in the Belmont Grill on November 13, 1971, defendant's answers were all exculpatory. The prosecutor then proceeded to play several of the taped conversations and asked defendant whether he could identify his or his wife's voice. Defendant testified that he could not and was then excused.

■ On September 12, 1972, the grand jury returned a one count indictment charging defendant and fifteen other persons with having violated 18 U.S.C. §§ 2, 1955. On November 17, 1972, defendant filed a motion to suppress intercepted wire communications and all other evidence obtained as a result thereof. On the same date, he also filed a motion seeking discovery of logs of any electronically intercepted communications to which he was a party. The government on February 23 turned over all applications, affidavits, court orders, logs, motions and other related papers that were filed in connection with the June, 1971, interception to defendant's counsel. By doing so, the government satisfied the notice requirements of § 2518(9).[3] With the written consent of the parties, defendant's motion to suppress was stayed more than two years pending the Supreme Court's decision in *United States v. Giordano,* 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341 (1974). Following a hearing in July, 1975, the district court suppressed all of the intercepted conversations as to defendant. While it assumed that the omission of defendant's name from the November 17 list resulted from inadvertence, it held that the govern-

ment's conduct nevertheless violated § 2518(8)(d), that the interception therefore had not been made "in conformity with the order of authorization or approval" within the meaning of § 2518(10)(a)(iii), and that the suppression of the communications was statutorily required. This appeal followed, the disposition of which was deferred pending the Supreme Court's decision in *United States v. Donovan, supra.*

■ *Donovan,* which also involved a case in which there had been almost complete compliance with subsection 8(d), renders invalid the district court's assumption that in the event of any failure to comply with the post interception inventory requirements, suppression is required by the statute.[4] Similarly, we think that *Donovan* and other Supreme Court opinions refute any suggestion that the failure to serve the statutory post interception notice upon defendant was a violation of the Fourth Amendment. Both the defendants in *Donovan* and the defendant in the case at bar received formal notice pursuant to § 2518(9) within a short period of time after they were indicted. If there were a substantial issue as to whether this notice was sufficient to satisfy a constitutional requirement, we feel confident it would have been discussed either in the opinion for the Court or in one of the dissents. *Cf. Ashwander v. TVA,* 297 U.S. 288, 345–48, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring).

■ We observe, moreover, that none of the decided cases can be read as suggesting that post interception notice must be served on individuals other than the primary targets of the search. To the extent such notice is constitutionally required, it is to provide the subjects of wiretaps with the

3. Section 2518(9) prohibits the government from introducing the contents of any intercepted communication into evidence in any proceeding unless each party thereto "has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved" within a reasonable time. Notably, the notice a party receives under this section is far more elaborate than that provided for by subsection 8(d).

4. We are aware of defendant's argument that the Supreme Court could not have intended to decide that suppression is not statutorily required under subsection (a)(iii) since that question was not briefed or argued. But we read the Court's opinion as clearly indicating its view that § 2518(10)(a)(iii) focuses exclusively upon the manner in which the interception is conducted and ceases to be operative when the interception is completed.

same safeguards which apply to conventional searches for tangible property. *See Katz v. United States,* 389 U.S. 347, 355 n. 16, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); *Berger v. New York,* 388 U.S. 41, 60, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967); *cf.* Fed.R.Crim.P. 41(d). With a conventional search, it has never been suggested that, when a letter in the possession of the primary target of the search contains communications from a third party, the third party is constitutionally entitled to notice and an inventory. *See United States v. Whitaker,* 474 F.2d 1246, 1247 (3d Cir. 1973); *cf. United States v. Kahn,* 415 U.S. 143, 155 n. 16, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). Service of notice on the primary targets of a search apparently satisfies whatever constitutional requirement exists. *Id.; but see United States v. Chun,* 503 F.2d 533, 536–38 (9th Cir. 1974). But, as we have indicated, we need not decide this broad question here. The February, 1973, notice defendant received was adequate to satisfy whatever constitutional requirement might exist. *Cf. United States v.. Chun, supra,* 503 F.2d at 538; note 6, *infra.*

Although *Donovan* disposes of any contention that suppression is required whenever § 2518(8)(d) has been violated, it did not decide that exclusion of the intercepted communications would never be an appropriate remedy for such a violation. Indeed, it expressly reserved decision as to whether suppression of such evidence might be proper if the government "knowingly sought to prevent the district court from serving the inventory notice on particular parties." 429 U.S. at 439 n. 26, 97 S.Ct. at 673 n. 26. Since it determined that neither of the individuals affected by the violation in that case had been prejudiced by failing to receive notice, *id.,* the Court did not consider whether suppression would be appropriate if actual prejudice were shown. Since defendant here contends both that he was prejudiced and that the violations were intentional, we face these questions.

■ *Donovan* recognized the government's duty to assist the district court in determining who shall receive the discretionary inventory notice. If this statutory duty is to have any practical significance, we think it is necessary to "attach consequences to its violation which discourage abuse and which protect against resulting injury." *United States v. Donovan,* 513 F.2d 337, 346 (6th Cir. 1975), *rev'd on other grounds,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (dissenting opinion). At the same time, we recognize that suppression of reliable evidence is a drastic sanction and that, in the absence of constitutional or statutory compulsion, it should be employed only when it would substantially further important federal policies.

■ Because we believe that injuries which result from a violation of subsection 8(d) should not go unremedied, we join those courts that have accepted the general proposition that suppression is an appropriate remedy when a defendant can show that the failure to serve an inventory notice caused him actual prejudice and that the prejudice which resulted cannot otherwise be cured. *See United States v. Cirillo,* 499 F.2d 872 (2d Cir.), *cert. denied,* 419 U.S. 1056, 95 S.Ct. 638, 42 L.Ed.2d 653 (1974); *United States v. Iannelli,* 477 F.2d 999 (3d Cir. 1973), *aff'd on other grounds,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975); *United States v. Wolk,* 466 F.2d 1143 (8th Cir. 1972); *cf. United States v. Donovan, supra,* 513 F.2d at 346 (dissenting opinion). At the same time we doubt that many defendants will be able to make a showing of actual prejudice. The Court's opinion in *Donovan* indicates that the service of a § 2518(9) notice will often preclude any such claim. 429 U.S. at 439, n. 26, 97 S.Ct. at 673.

■ We also agree with the view of the two dissenting justices in *Donovan, see* 429 U.S. at 445, 97 S.Ct. at 678 (Marshall, J., dissenting), and of several courts of appeals, *see United States v. Chun, supra,* 503 F.2d at 542; *United States v. Eastman,* 465 F.2d 1057 (3d Cir. 1972), that suppression should be required when the statutory violation arose from a conscious decision by the federal authorities to violate the law and prevent an individual or group of indi-

viduals from receiving the post interception notice. The unseemliness of government officials deliberately disobeying the law is obvious. In our view, the interest of deterring it outweighs the costs of excluding the evidence.[5]

Although we are willing judicially to fashion an exclusionary rule to remedy certain violations of subsection 8(d), this rule will not benefit defendant. Defendant has demonstrated no actual prejudice resulting from the violation and is in no position to claim that the violation was an intentional one.

While defendant urges that his failure to receive timely notice of the wiretap prejudiced him because it made him unaware that he was a target of the grand jury's investigation, the record does not substantiate the claim that any actual prejudice resulted.[6] As the district court noted: "[i]t does not appear that the defendant made any damaging admissions with reference to the tape recording at his grand jury appearance, . . . and in fact the contrary may be inferred from his affidavit submitted in support of his motion [to suppress]."[7] Since no actual injury has been shown, suppression is not appropriate.

As to the intentional nature of the violation, the district court assumed and

purported to find that the government's failure to comply with its statutory duties resulted from inadvertence. While defendant now objects that there is "not a scintilla of evidence" that the violation was unintentional and urges a remand, we think defendant has waived any claim that the violation was purposeful. At no time in the district court did defendant attempt to support his motion to suppress on the ground that the government's statutory violation was deliberate. Indeed, when the district court commented that it had no doubt that the government had acted in good faith, defendant's counsel replied that he was not asserting that there had been an intentional omission, but thought the question irrelevant since he believed § 2518(10)(a) mandated suppression. If this record does not contain evidence supporting the district court's finding of inadvertence, it is because the government was never told that its good faith was in issue. Had defendant raised the issue, the government would have responded by putting on evidence explaining, to the extent it could, both the facts surrounding the omission of defendant's name from the November 17 list and the reason no updated list including defendant's name was thereafter submitted to the district court.[8]

---

5. We recognize that individuals such as the defendant may have a civil remedy against officials who violate subsection 8(d). *See* § 2520. But in light of the difficulties such defendants would have establishing damages, we doubt that this remedy is adequate either to deter intentional statutory violations or to protect against injuries resulting from the violations.

6. Defendant initially urged that the delay in the receipt of his notice prejudiced him by rendering stale the defense investigation, but he has abandoned this claim in light of the *Donovan* Court's apparent rejection of a similar contention. *See* 429 U.S. at 439, n. 26, 97 S.Ct. at 673.

7. Since defendant, who made *no incriminating* statements, was not held in contempt for refusing to answer questions which may have been based on the wiretap, he is not in a position to argue that the lack of notice prejudiced him by denying him an opportunity to challenge the validity of the wiretap in the course of the grand jury proceedings. *See Cali v.*

*United States,* 464 F.2d 475 (1st Cir. 1972); *cf. Gelbard v. United States,* 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179 (1972).

Nor does the possibility that notice would have enabled him to consult counsel and make a better impression before the grand jury—either by concocting a better story or possibly by taking the Fifth Amendment—constitute the kind of prejudice that would require suppression of the wiretap evidence. Naturally we here are expressing no opinion as to whether a portion of the grand jury testimony might be suppressed if, for example, defendant should be subsequently indicted for perjury. *Cf. United States v. Mandujano,* 425 U.S. 564, 96 S.Ct. 1768, 48 L.Ed.2d 212 (1976).

8. Here the government not only omitted the defendant's name from the November 17 list, but also failed to apprise the district court of this omission at any time thereafter. *Cf. United States v. Donovan, supra,* 513 F.2d at 342. The question thus arises whether the government's obligation to transmit a defendant's name to the district court remains in effect

No miscarriage of justice results from our refusal to remand. In cases like the one at bar where there was almost complete compliance with subsection 8(d), a purposeful violation is extremely unlikely. By transmitting the names of 26 of the 27 identifiable persons whose conversations were overheard, the government demonstrated an awareness of its statutory duty and, at least, a general desire to satisfy it. We think it exceedingly improbable that the government would have deliberately violated its statutory duty only as to defendant. Unlike other types of prosecutorial misconduct, compare *United States v. Belculfine*, 508 F.2d 58 (1st Cir. 1974), the government could have had little reason to attempt to prevent defendant from receiving a subsection 8(d) inventory notice. First, the government could scarcely have contemplated that it would receive a tactical advantage therefrom. Even if it had thought the absence of notice might somehow prejudice defendant, the government could not have believed that noncompliance with subsection 8(d) would prevent defendant from receiving notice. It was probable that defendant would have learned of the interception from one of the 26 persons who actually were served with the statutory notices. *See United States v. Donovan, supra*, 513 F.2d at 343 & 346–47. Moreover, the responsible officials would have recognized that the omission of defendant's name carried with it a substantial risk to any subsequent prosecution. The statutory violation was certain to be detected, and given the unsettled state of pre-*Donovan* law, the government, would have had to fear that suppression of the wiretap evidence would be the sanction for the violation. In view of the substantial dangers attendant upon such action and the minimal advantages which could have resulted, we think it so unlikely that defendant's failure to receive his subsection 8(d) notice resulted from purposeful government misconduct that we see no reason to remand in order to give defendant an opportunity to explore a claim which could have been, but was not asserted earlier.

\*　　\*　　\*　　\*　　\*　　\*

Because suppression of the wiretap evidence as to defendant is not warranted under § 2518(10)(a), the Fourth Amendment, or the exclusionary rule we announce today, the judgment of the district court granting defendant's motion to suppress is

*Reversed.*

---

until the government has either informed the district court of the omission or has satisfied the policies of § 2518(8)(d) by another vehicle. Cf. *United States v. Wolk, supra*. This point is not expressly addressed in *Donovan*, but we can perceive no reason why the government's duty to assist the district court should not be a continuing one. The sole practical consequence of this rule, of course, is that suppression will be required when the government, following an initial inadvertent omission, learns of the error but decides to breach the statute by not disclosing the defendant's name to the district court.