# United States Court of Appeals
## For the First Circuit

No. 15-1377

UNITED STATES OF AMERICA,

Appellee,

v.

MARTINHO RODRIGUES, A/K/A THOEY, A/K/A THO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella, Selya, and Thompson,
Circuit Judges.

Inga L. Parsons for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with
whom Carmen M. Ortiz, United States Attorney, was on brief, for
appellee.

March 1, 2017

**THOMPSON**, **Circuit Judge**.  A Massachusetts jury failed to reach a unanimous verdict on a multiple count indictment charging Martinho Rodrigues with conspiring with 29 others to distribute assorted drugs in several Boston area neighborhoods.  Rather than face a repeat trial, Rodrigues opted to plead guilty to Count One, conspiracy to distribute marijuana in violation of 21 U.S.C. § 846, but he preserved his right to appeal the trial court's denial of his motion to suppress.  Before us, he claims the government, in bad faith, failed to meet the strict procedural requirements for obtaining wiretaps under 18 U.S.C. § 2517-2522.  He also argues that the court erred in denying him a hearing to explore his misrepresentation and bad faith concerns.  For the following reasons, we affirm the district court's ruling.

## Background

In the summer of 2011, the Federal Bureau of Investigation ("FBI") and the Boston Police Department ("BPD") initiated an investigation into the purported drug-trafficking activities of the Woodward Avenue and Hendry Street gangs in Roxbury and Dorchester, Massachusetts.  During the course of the investigation, the district court issued four, successive 30-day orders authorizing the interception of six cell phones known to be used by Alexis Hidalgo and Jonathan Dasilva -- two gang members from whom a cooperating witness had conducted several controlled purchases.

- 2 -

The first order, on August 8, 2012, authorized the interception of target telephones #1 and #2 ("TT1" and "TT2"), which were known to be used by Hidalgo. The wiretap expired on September 7, 2012 -- thirty days after its authorization -- and the wiretap application and affidavit in support of the application were sealed until further order of the court. On September 5 and 7, the district court granted the government's motions to seal the resulting recordings from the wiretap and to postpone inventory notice[1] to targeted subjects until further order of the court for all communications intercepted.

The second order was granted on September 25, 2012. The government sought and was granted authorization to intercept target telephones #3 and #4 ("TT3" and "TT4") -- both known to be used by Hidalgo and Dasilva in furtherance of the drug-trafficking offenses. Like the first wiretap, the September 25 wiretap was to expire thirty days after its authorization on October 25, 2012. Unlike the first wiretap, however, the government did not immediately request to seal the resulting recordings or postpone inventory notice from the second wiretap by the date of its expiration. Instead, on October 24, 2012 -- a day before the September 25 wiretap was slated to expire -- the government

---

[1] We explain inventory notice later on, but generally, the wiretap statute entitles the target subject to receipt of certain information once the intercept and investigation is complete.

submitted a third wiretap application in which it sought authorization of a new target, telephone #5 ("TT5"), as well as the continued interception of TT3 and TT4 that had initially been granted in the September 25, 2012 order (and slated to end October 25, 2012). The district court granted the government's request, for thirty days. On November 27, 2012 -- four days, or two business days, after the October 24 order expired -- the district court granted the government's motion to seal the recordings and postpone inventory notice until further order of the court for all communications intercepted on TT3, TT4, and TT5.

On December 21, 2012 the government submitted its fourth and final wiretap application. In that application, the government sought to renew its interceptions of TT3, TT4, and TT5, and also sought to intercept communications from a final target telephone #6 ("TT6"). The district court granted the government's motion. Both the renewals of TT3, TT4, and TT5 and the initial interception of TT6 were all set to expire -- again, 30 days after their authorization -- on January 20, 2013. On January 18, 2013 the court granted the government's motion to seal the resulting recordings and postpone inventory notice on communications intercepted pursuant to the December 21, 2012 order.

As a result of the government's investigation, Rodrigues, along with 29 co-defendants, was charged with conspiracy to distribute cocaine base, cocaine, oxycodone, and

marijuana in violation of 21 U.S.C. § 846. The magistrate judge subsequently held grouped detention hearings and Rodrigues proceeded alongside co-defendant Moises Figueroa. During the two-day hearing held on May 21 and June 10, 2013, BPD Detective Martin O'Malley testified and submitted an affidavit in support of the government's detention motion. O'Malley testified that Rodrigues was a known associate of Hidalgo and Dasilva from the outset of the investigation and that Rodrigues had been observed on pole camera footage at a meeting spot for the Woodward and Hendry Street gangs. Despite this knowledge, however, Rodrigues was never listed as a target subject in any of the four wiretap applications submitted by the government. Yet, in the December application Rodrigues was mentioned as the individual who agents believed Dasilva referenced during an intercepted call. At the close of the hearing, the court issued an order of detention, remanding Rodrigues into custody pending trial.

In pretrial proceedings, Rodrigues filed a motion to suppress evidence obtained pursuant to the issued wiretaps. In that motion, Rodrigues raised four arguments, namely, that: (1) the government deliberately and in bad faith omitted him as a target subject and as an identifiable person overheard on all four wiretap applications in violation of 18 U.S.C. § 2518(1)(b)(iv) and 18 U.S.C. § 2518(8)(d); (2) the government's wiretap applications failed to show necessity or demonstrate that

- 5 -

alternative investigative techniques would not succeed as required pursuant to 18 U.S.C. § 2518(1)(c); (3) the government failed to present the tapes for timely sealing pursuant to 18 U.S.C. § 2518(8)(a); and (4) that the court should hold a Franks hearing to explore his allegations of bad faith. The court denied Rodrigues's motion to suppress without a hearing.

With regard to Rodrigues's bad faith claim, the court found that he failed to make a credible case for his contention that the government deliberately failed to list him in the wiretap applications. Specifically, the district court found that a purposeful violation in a case like this, where there was a "30-plus defendant criminal conspiracy" and "there was almost complete compliance with subsection 8(d) [of Title III]," was extremely unlikely. In denying his motion, the court found that Rodrigues had not demonstrated any actual "prejudice resulting from the violation" and that he pointed to no real evidence in the record to substantiate that the violation was an intentional one.

With regard to Rodrigues's claim that the government's applications failed to meet the Title III necessity requirement (i.e., that other investigative techniques would not have succeeded), the district court found that the "details [of the initial wiretap affidavit were] extensive and persuasive, and certainly, [as our case law requires,] 'minimally adequate' to support the authorization of a wiretap." The court also found

that the affidavit in support of the government's application sufficiently stated the unfulfilled goals of the investigation which necessitated the wiretap and, citing United States v. Martinez, 452 F.3d 1, 6 (1st Cir. 2006), that those goals were "nearly identical to those accepted as valid by the First Circuit in the face of an identical challenge."

With regard to Rodrigues's claim that the recordings from the September and October wiretaps were not timely sealed, the district court found that the October wiretap order was in fact an extension of the September wiretap order and that "a two business-day delay [did] not violate 18 U.S.C. § 2518(8)(a), particularly where, as here, the expiration date was the day after Thanksgiving, and the recordings were kept in a secure location with limited access and password protection."

With the district court finding the wiretap evidence admissible, Rodrigues proceeded to trial on March 2, 2015. However, at the close of trial, the jury was unable to reach a verdict and the district court declared a mistrial. After the mistrial, Rodrigues, as we noted earlier, pled guilty solely to the marijuana conspiracy, reserving his right to appeal the denial of his suppression motion. So here we are.

## Discussion

Before delving into the merits of Rodrigues's claims, some brief background on the general setup of the federal wiretap

statute might prove helpful.  "Title III provides a comprehensive scheme for the regulation of electronic surveillance, prohibiting all secret interception of communications except as authorized by certain state and federal judges in response to applications from specified federal and state law enforcement officials."  Dalia v. United States, 441 U.S. 238, 249 (1979).  Indeed, "Congress enacted Title III of the Omnibus Crime Control and Safe Streets Act of 1968 with the stated purpose of '(1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized.'" United States v. Cartagena, 593 F.3d 104, 108 n.1 (1st Cir. 2010) (quoting Gelbard v. United States, 408 U.S. 41, 48 (1972)).  And where law enforcement authorities fail to comply fully with the requirements of Title III, suppression may be merited if "the communication was unlawfully intercepted; the order of authorization or approval" under which it was intercepted is insufficient on its face; or the interception was not made in conformity with the order of authorization or approval.  18 U.S.C. § 2518(10)(a).  While suppression may be merited where a communication is unlawfully intercepted, "(not) every failure to comply fully with any requirement provided in Title III[, the precise issue raised in Rodrigues's appeal,] would render the interception of wire or oral communications 'unlawful.'"  United

- 8 -

States v. Donovan, 429 U.S. 413, 433 (1977) (quoting United States v. Chavez, 416 U.S. 562, 574-75 (1974)).

Before us, Rodrigues reprises the same four arguments he made below.  We address each argument in turn, keeping in mind our well-rehearsed standards of review.  The district court's factual findings and credibility determinations get clear error scrutiny.  United States v. Lyons, 740 F.3d 702, 720 (1st Cir. 2014).  "To find clear error, an inquiring federal court must form a strong, unyielding belief, based on the whole of the record, that a mistake has been made."  United States v. Siciliano, 578 F.3d 61, 67–68 (1st Cir. 2009) (quoting In Re Grand Jury Investigation, 545 F.3d 21, 24 (1st Cir. 2008)).  "We affirm under the clear error standard 'if any reasonable view of the evidence supports' the district court's finding."  Id. at 68 (quoting United States v. Rivera-Rivera, 555 F.3d 277, 283 (1st Cir. 2009)).  We review the court's legal conclusions de novo.  Lyons, 740 F.3d at 721; see also United States v. McLellan, 792 F.3d 200, 212 (1st Cir. 2015) ("Our review of the district court's denial of [defendant's] motion to suppress is bifurcated: we review its findings of fact for clear error and apply de novo review to the application of law to those facts and to conclusions of law.") (citations omitted).

## A. "Bad Faith" Omissions

Rodrigues claims that the government deliberately omitted him as a target subject as required under 18 U.S.C. §

2518(1)(b)(iv) and deliberately failed to identify him as an individual overheard during the course of the wiretaps pursuant to 18 U.S.C. § 2518(8)(d). See Donovan, 429 U.S. at 431 (agreeing with the Ninth Circuit that § 2518(8)(d) imposes a duty on the government "to classify all those whose conversations have been intercepted[] and to transmit this information to the judge."). He argues that these omissions were done deliberately and in bad faith -- thereby depriving him of the inventory notice required under 18 U.S.C. § 2518(8)(d).[2] As discussed above, the district court found Rodrigues's bad faith allegations incredible and, further, that he suffered no prejudice.

Under 18 U.S.C. § 2518(1)(b)(iv), "a wiretap application must name an individual if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's

---

[2] Rodrigues also argues that these omissions denied him a probable cause determination by the issuing judge. A judge may authorize a wiretap order upon a determination that probable cause exists to believe that an individual is, has, or is about to commit a crime and that particular communications concerning the crime will be obtained through the interception. 18 U.S.C. § 2518(3). Try as we might, we cannot reconcile this argument with Rodrigues's assertion of bad faith. On the one hand, Rodrigues argues that if listed as a target subject, "the lack of evidence of [his] involvement would very likely have led to a determination of [a] lack of probable cause to make him a target." On the other hand, Rodrigues argues that he should have been listed as a target subject because the government knew who he was and his role in the conspiracy well before August 2012 and therefore had probable cause to list him as a target. In all events, the assignment of error is without merit.

- 10 -

conversations over the target telephone." Id. at 428. Under 18 U.S.C. § 2518(8)(d) a "judge shall cause to be served, on the persons named in the [wiretap] order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory" giving notice of, among other the things, the entry of the order or application, its disposition, and communications intercepted. Section 2518(8)(d) imposes a duty on the government to provide the district court with a complete list of identifiable persons overheard on the wiretaps to assist with its discretionary power to issue inventory notice. Id. at 431. Under both §§ 2518(1)(b)(iv) and 2518(8)(d), the failure to name all target subjects or all identifiable individuals whose conversations have been overheard does not automatically require suppression. See id. at 439.

Nevertheless, we have also held that "suppression should be required when the statutory violation arose from a conscious decision by the federal authorities to violate the law and prevent an individual or group of individuals from receiving the post interception notice." United States v. Harrigan, 557 F.2d 879, 884-85 (1st Cir. 1977). In addition to volitional governmental behavior, we have also indicated that "suppression is an appropriate remedy when a defendant can show that the failure to

- 11 -

serve an inventory notice caused him actual prejudice and that the prejudice which resulted cannot otherwise be cured." Id. at 884.

Here, even if we assume, as it appears the district court did, that the government should have listed Rodrigues as a target subject,[3] the mere failure to name additional targets or to list

_____

[3] The government claims to have lacked the probable cause necessary to identify Rodrigues as a target subject in any of its four wiretaps; however, the government admits that it was generally aware of Rodrigues's drug and gang-related activities and associations prior to the underlying investigation in this case. The record indicates that there were at least two instances in October 2012 in which Rodrigues was identified during the course of the government's investigation: (1) an incident on October 23, 2012 where Dasilva called Rodrigues to assist a fellow gang member who was being threatened by a rival gang; and (2) an incident on October 31, 2012 where agents intercepted a call from Dasilva asking Rodrigues to pick up contraband associated with a marijuana sale on Woodward Avenue. The agents later confirmed that Rodrigues was the individual spoken to during the October 31 call by confirming his identity with pole camera surveillance. It is unclear from the record at what point the government determined that Rodrigues was the individual referenced in either of these October incidents. During oral argument, the government conceded that on October 20, 2012 -- before the third October 24 wiretap application -- agents had indicated being suspicious that Hidalgo was speaking to Rodrigues during an intercepted call. Given the government's general knowledge of Rodrigues's identity and his criminal associations with the target subjects/owners of the target cell phone numbers in the wiretap applications, the agents' suspicion that Hildalgo was speaking with Rodrigues during intercepted calls, and the confirmation of Rodrigues's identity in the October 31 call and pole camera footage, the government may have had probable cause to believe that Rodrigues was engaged in the criminal activity under investigation and a reasonable expectation to intercept his conversations over the target telephones at least well before its last December application. If that were the case, the government should have listed Rodrigues as a target subject in at least the December 21, 2012 application and its failure to do so would have constituted a violation of Title III. The government argues that it was unaware of Rodrigues's involvement in real time and the record is indeed unclear on the

Rodrigues as an individual overheard on the wiretaps does not necessitate suppression under § 2518(10)(a)(i). See Donovan, 429 U.S. at 439. While suppression may be appropriate where the government knowingly and in bad faith seeks to "[keep] relevant information from the District Court," id. at 436 n.23, we agree with the district court's findings that Rodrigues failed to present a credible case of bad faith omissions or that he suffered any prejudice because of the omissions.

Indeed, a reasonable view of the evidence supports the district court's conclusion that a purposeful violation is extremely unlikely. This case bears a striking resemblance to Harrigan, where we noted:

> In cases like the one at bar where there was almost complete compliance with subsection 8(d), a purposeful violation is extremely unlikely. By transmitting the names of 26 of the 27 identifiable persons whose conversations were overheard, the government demonstrated an awareness of its statutory duty and, at least, a general desire to satisfy it. We think it exceedingly improbable that the government would have deliberately violated its statutory duty only as to defendant.

557 F.2d at 886.

Here, the government listed 27 of the 30 defendants indicted as target subjects in its wiretap applications. Like

timing of the government's confirmation of Rodrigues's identity in this specific investigation. Given our rulings today, we need not resolve this dispute.

Harrigan, we find it improbable that the government would have deliberately omitted only three defendants, including Rodrigues, to no gain. See id. And other than the fact of the omission, Rodrigues points to no other evidence supporting his bad faith claim.

Rodrigues also proffers no explanation of how he was prejudiced outside of his bald assertion that the government intended to circumvent his Title III inventory notice rights. However, the record reflects, and Rodrigues does not seriously dispute, that the issuing judge, based on the ongoing nature of the government's investigation, delayed inventory notice to subject targets at the expiration of each wiretap until further order of the court. Consequently, Rodrigues was given inventory notice at the same time as all other co-defendants -- at their initial appearance or arraignments in January 2013 after the indictment was returned and within a timeframe designated by the court. We cannot say that the district court clearly erred in its factual and credibility findings (clear error requires an "unyielding belief, based on the whole of the record, that a mistake has been made," Siciliano, 578 F.3d at 67 (citation omitted)) nor can we say that the district court erred in its application of the law to the facts. See United States v. Dudley, 804 F.3d 506, 512 (1st Cir. 2015) (when reviewing a denial of a motion to suppress, "we review the district court's legal

determinations, including its application of the law to the facts, de novo").

## B. Necessity

Next, Rodrigues argues that in all four wiretap applications, the government failed to show necessity as required by Title III. The "necessity" requirement obliges the government to include in its wiretap application "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(1)(c). "[W]e [have] held § 2518(1)(c) 'to mean that the statement should demonstrate that the government has made a reasonable, good faith effort to run the gamut of normal investigative procedures before resorting to means so intrusive as electronic interception of telephone calls.'" United States v. Martinez, 452 F.3d 1, 4 (1st Cir. 2006) (citing United States v. Villarman-Oviedo, 325 F.3d 1, 9 (1st Cir. 2003)). However, we have also made clear that "the government need not demonstrate that it exhausted all investigative procedures." United States v. Santana, 342 F.3d 60, 65 (1st Cir. 2003); see also Cartagena, 593 F.3d at 109 ("To establish necessity, the government is not required to show that other investigative methods have been wholly unsuccessful . . . nor must the government exhaust all other investigative measures before resorting to wiretapping.")

(citations omitted). Accordingly, "[w]hen reviewing the government's showing of necessity, our role 'is not to make a de novo determination of sufficiency as if [we] were [the issuing judge], but to decide if the facts set forth in the application were minimally adequate to support the determination that was made.'" Santana, 342 F.3d at 65 (citing United States v. López, 300 F.3d 46, 53 (1st Cir. 2002)).

Upon review, we are satisfied with the applications' minimal adequacy. FBI special agent Matthew C. Knight filed an 82-page affidavit in support of the first wiretap application on August 8, 2012, which detailed the government's investigation efforts up until that point. The affidavit:

- spelled out the numerous traditional investigative methods utilized, including physical and video surveillance, confidential witnesses and informants, search warrants, controlled purchases, pen registers, trap and trace devices, and toll record analysis;

- explained why other traditional investigative methods, such as undercover agents, grand jury subpoenas, and trash searches were not utilized and were believed unlikely to prove successful; and

- explained that the wire interceptions were necessary to "fully identify all of the Target Subjects" and their

- 16 -

co-conspirators, as well as their suppliers of firearms and controlled substances.

We have regularly upheld affidavits in support of wiretap applications where the agents assert a well-founded belief that the techniques already employed during the course of the investigation had failed to establish the identity of conspirators, sources of drug supply, or the location of drug proceeds. See Martinez, 452 F.3d at 5-6 (finding the goals of identifying drug suppliers, the manner in which the organization transported drugs, how payments were made, storage locations for drugs, and the manner in which a defendant and his associates laundered and invested drug proceeds to be "discrete and realistic goals for a criminal drug investigation" and "similar to goals that we have approved for wiretaps in previous cases."); Santana, 342 F.3d at 66 (upholding wiretap application as sufficient where affiant "stated that a wiretap was necessary to uncover the full scope of the conspiracy, including conclusive proof of identity and information as to how the drug sales were made"); López, 300 F.3d at 53 (finding wiretap application sufficient where affidavit demonstrated that traditional techniques "failed to establish the identity of some conspirators"); United States v. Ashley, 876 F.2d 1069, 1074 (1st Cir. 1989) (finding wiretap application and supporting affidavit sufficient where the agent set forth his belief that wire communications would "illuminate details of the

cocaine conspiracy including the roles of the participants and the financial backing," and assist in "gathering the necessary evidence to sustain prosecution of the supplier(s)"). Here, the initial application and supporting affidavit can reasonably be found to be more than adequate.

So too are the three remaining wiretap applications -- granted on September 25, October 24, and December 21 -- which contain similar supporting information from the affiant, FBI agent Matthew C. Knight. The subsequent applications also provide detailed accounts of communications intercepted as a result of the preceding wiretaps -- including a detailed list of calls received to and from the target telephones which supported the agent's finding of probable cause.

Having reviewed the applications and supporting affidavits in this case, we find no flaws in the district court's determination that the facts spelled out in the applications were at least minimally sufficient to support its grant of wiretap intervention. See Ashley, 876 F.2d at 1073. The government's affidavit is adequate if it indicates a reasonable likelihood that alternative techniques would fail to expose the crime. The government meets this burden here.[4]

_____

[4] Rodrigues also makes a number of subsidiary arguments that the government failed to file separate wiretap applications, that the applications were "bundled" together, and that the applications contained the same "boilerplate" information without

- 18 -

## C. Sealing

Rodrigues also argues that the government did not timely present communications intercepted from the September and October wiretaps for sealing as the wiretap statute requires. Under 18 U.S.C. § 2518(8)(a) recordings obtained pursuant to a Title III wiretap must be sealed "[i]mmediately upon the expiration of the period of the [wiretap] order, or extensions thereof." Section 2518(8)(a) provides further that "[t]he presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof," is a prerequisite to the admissibility of evidence procured pursuant to a wiretap order.

According to Rodrigues, the September 25 wiretap was not extended by the October 24 wiretap and the September recordings needed to be sealed upon expiration of the September wiretap on October 25, 2012. Assuming this timeline is correct, by Rodrigues's count, there was a 33-day delay in the sealing of the September wiretap recordings, which were not sealed until November

---

establishing probable cause. We can quickly dispose of Rodrigues's complaints. A review of the record demonstrates that these assertions are simply false. The government filed four separate applications on four separate dates, each containing new information establishing probable cause based on previously intercepted calls. Even where subsequent affidavits overlap considerably in language with an initial affidavit and with each other, we have found no error when the affidavits contain specific and concrete details which pertained to the specific investigation. See United States v. Yeje-Cabrera, 430 F.3d 1, 9 (1st Cir. 2005).

27, 2012. The government counters that the October order was an extension of the September order and thus the expiration date for both orders (and the accompanying target telephones) was November 23, 2012.

The parties agree that the motion to seal the October 24 wiretap was filed late -- it expired on November 23, 2012, but the initial recordings requested in that wiretap were also not sealed until November 27, 2012. By Rodrigues's count, this resulted in a four-day (or two-business-day) delay in the sealing of the October 24 recordings. Rodrigues argues that the lack of strict adherence to the sealing requirements of Title III mandated suppression. The government counters that the district court did not err in its finding that a two-business-day delay did not violate the requirements of Title III because the expiration date fell on the Friday after Thanksgiving and the recordings were kept in a secure location.

Section 2518(8)(a) provides no definition for what constitutes "immediately." See 18 U.S.C. § 2518(8)("Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions."); Id. at § 2510; United States v. Matthews, 431 F.3d 1296, 1307 (11th Cir. 2005) (agreeing with the Second, Sixth, and Ninth Circuits that recordings sealed "'within one or two days' is a reasonable,

- 20 -

workable interpretation of [the] term [immediately]"); United States v. Coney, 407 F.3d 871, 873 (7th Cir. 2005) ("Ten days is too long to be thought 'immediate.' The term '[i]mmediately' means that the tapes should be sealed either as soon as practical after the surveillance ends or as soon as practical after the final extension order expires" and "[t]hat shouldn't require more than a couple of days at most.") (citations omitted). But assuming that the recordings were not timely sealed, suppression is not warranted here. Recordings that are not presented for timely sealing pursuant to § 2518(8)(a) may still be admissible if the government offers a "satisfactory explanation" for the delay. Mora, 821 F.2d at 867 ("When sealing is other than 'immediate,' we believe that the resultant evidence can be utilized if -- and only if -- a 'satisfactory explanation' for the delay eventuates.").

In determining whether the government's explanation is satisfactory, we consider inter alia: (1) whether, by clear and convincing evidence, the government has established that the integrity of the tapes has not been compromised; and by a fair preponderance of the evidence (2) whether the government has demonstrated that the delay in presenting the tapes for judicial sealing came about in good faith, which requires a showing that the defendant was not prejudiced by the delay and that the government did not benefit unfairly from the lack of immediacy; (3) the length and frequency of any particular delay; and (4) the

cause of the delay.  See id. at 867-69 (The government must "carry the burden of proving the continued integrity of the tapes by clear and convincing evidence.  If it fails to do so, the inquiry is at an end.  And, even if the court is satisfied that the evidence is unsullied, the government must yet prove, by a fair preponderance, that the explanation for the delay, taken in all its aspects, is otherwise satisfactory.").  And we have "stress[ed] that there is no stock formula by which the adequacy of an explanation can invariably be gauged," but that "[t]he trial judge must scrutinize these situations case by case, giving due weight to the factors which we have mentioned and to any other material which bears upon the reasonableness of the conduct under the circumstances then obtaining."  Id. at 869.

In our review of "the question of whether the government's explanation for the absence of a seal that complies with the requirements of section 2518(a) is 'satisfactory,'" we accept "the district court's supported subsidiary factual findings, but appl[y] de novo review to whether those facts were satisfactory under the newly announced test [in United States v. Mora, 821 F.2d 860, 869-70 (1st Cir. 1987)]."  United States v. Burgos-Montes, 786 F.3d 92, 104 (1st Cir.), cert. denied, 136 S. Ct. 599 (2015).

Here, accepting the district court's subsidiary findings, we conclude that the government has presented a

- 22 -

satisfactory explanation for its delay.  First, there is no indication in the record, nor does Rodrigues suggest, that the integrity of the tapes has been compromised or tampered with in any way.  And "[w]hile the burden of proof is on the government, this does not mean the government must prove a negative" when the defendant does not allege tampering.  Burgos-Montes, 786 F.3d at 104.  Second, Rodrigues does not argue, nor is there support in the record of, bad faith on the part of the government.  Additionally, there is no evidence of any prejudice to Rodrigues or unfair benefit to the government as a result of the delay in sealing.

Next, with regard to the length of the delay, the district court concluded that the October order served as an extension of the September order and that the resulting delay in sealing for both orders was thus two business days.  We accept the district court's factual finding.  See id. (noting that "we accept[] the district court's supported subsidiary factual findings").  The October 24 affidavit in support of the government's application made clear that the government sought the "continued interception" of TT3 and TT4, as well as the "initial interception" of TT5.  Both the extension requests for continued interception of TT3 and TT4, as well as the initial application for interception of TT5, sufficiently supported the district

court's factual finding that the October order served as an extension of the September order.

We also agree with the district court that, given the holiday weekend and the maintenance of the recordings in a secure location, such a two-business-day delay does not raise concerns over the integrity of the recordings. As we expressed in Mora, "[t]he longer the delay, the greater looms the danger of adulteration; the longer the delay, the harder it may become to show, say, good faith or the absence of undue prejudice. And the lengthier the delay, the more difficult to find the government's explanation 'satisfactory.'" 821 F.2d at 868. The two-day delay here raises no such concerns where the recordings were kept safe and secure in a password-protected location throughout the duration of the delay over the holiday weekend, the government received no unfair advantage, and Rodrigues has demonstrated no prejudice. See Mora, 821 F.2d at 870 (noting that "[a]lthough we eschew rigid adherence to a numeric countdown of the days as outcome-determinative," a delay of twenty or forty-one days "is not so great as to require automatic exclusion of the evidence").

With regard to the cause of the delay, the government does not make clear why the delay occurred. The district court attributed the government's delay to the holiday weekend. When considering the cause of the delay, "[w]e ask, among other things, was the statutory requirement ignored deliberately or

inadvertently?"  Id. at 869.  Here, while it is unclear why the government did not file for sealing until two business days after the expiration of the October wiretap, there is no indication of "gross dereliction of duty or wilful disregard for the sensitive nature of the activities undertaken by means of the order[s]." Id.

### D. Hearing

Lastly, Rodrigues argues that the district court should have held a "hearing" to address his claim that the government acted deliberately and in bad faith when it omitted him from the wiretap applications.

Below, Rodrigues asked specifically for a Franks hearing, but he did so by merely joining in his co-defendants' motions -- mentioning in a perfunctory one-liner at the end of his motion to suppress that he "join[ed] in and adopt[ed] his co-counsel's motions to the extent applicable, including . . . [their] Request for [a] Franks Hearing."  Notwithstanding the form of the request, the district court responded and rejected his argument, finding that he "failed to provide any proof of falsehood, let alone reckless or material falsehood, in the affidavit, which [was] presumptively valid."

Rodrigues renews his should-have-had-a-hearing argument on appeal, but it is unclear from his brief whether he is now claiming that the district court erred in not holding,

specifically, a Franks hearing, or more generally some other type of evidentiary hearing.[5]  Consistent with his effort below, Rodrigues spends little time developing any supportive argument here; rather he cursorily tells us that the judge should have "held a hearing to explore further the bad faith of the government agents."  Thus, he can fare no better with us.  The argument is deemed waived.  See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see also Rando v. Leonard, 826 F.3d 553, 557 (1st Cir. 2016) (finding an appellant's argument waived when at the district court she raised the argument in a single sentence in her opposition brief and then on appeal raised the argument in a footnote of her appellate brief) (citing Armistead v. C & M Transp., Inc., 49 F.3d 43, 45 n.2 (1st Cir. 1995)).[6]

## Conclusion

For the foregoing reasons, we affirm the district court's denial of Rodrigues's motion to suppress and its denial of his request for a hearing.

---

[5] "[A] Franks hearing may be held to address allegations of both material omissions as well as false statements" in federal wiretap affidavits.  Cartagena, 593 F.3d at 112.

[6] To the extent that Rodrigues is arguing for the first time on appeal that he was entitled to an evidentiary hearing and not necessarily a Franks hearing, it is well-established that "[a] party may not raise new arguments for the first time on appeal." In re Rauh, 119 F.3d 46, 51 (1st Cir. 1997).  Therefore, any such argument is also deemed waived.