# United States Court of Appeals
## For the First Circuit

No. 21-1834

RAILROAD AVENUE PROPERTIES, LLC,

Plaintiff, Appellant,

v.

ACADIA INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

Before

Lynch, Thompson, and Gelpí,
Circuit Judges.

James E. Grumbach, with whom Boston Law Collaborative, LLC
was on brief, for appellant.
Robert J. Maselek, Jr., with whom McDonough Cohen & Maselek
LLP was on brief, for appellee.

June 14, 2022

**LYNCH**, **Circuit Judge**.  Railroad Avenue Properties, LLC ("Railroad") sued Acadia Insurance Company ("Insurance Company")[1] for breach of contract to recover additional insurance proceeds for property damage sustained from a fire at one of Railroad's commercial properties ("Building").  The Insurance Company insured the Building and paid Railroad for damages arising out of the fire.  Railroad argues that it is entitled to additional payment under the terms of the insurance policy ("Policy") in the form of a depreciation holdback and code upgrade coverage.

The district court granted summary judgment in favor of the Insurance Company, holding that the terms of the Policy were clear and unambiguous, Railroad did not satisfy the Policy's condition precedent for receiving the additional insurance proceeds, and Railroad's failure to perform could not be otherwise

---

[1]  In the complaint, Railroad named Acadia Insurance Company ("Acadia") as the purported issuer of the insurance policy. It is undisputed that the insurance policy was actually issued by Tri-State Insurance Company of Minnesota ("Tri-State").  Acadia and Tri-State are both ultimately owned by W. R. Berkley Corporation.

On appeal, defendant argues for the first time that it is entitled to judgment as a matter of law because there was never a contract between Railroad and Acadia.  Defendant never filed a motion to dismiss due to misnomer and did not argue misnomer as a ground for summary judgment before the district court.  This argument is thus waived.  See Reyes-Colón v. United States, 974 F.3d 56, 62 (1st Cir. 2020).  Further, it is clear that Tri-State had notice of this action against it, and defendant has not shown that any prejudice would result from permitting Railroad to substitute Tri-State for Acadia.

excused.  <u>R.R. Ave. Props., LLC</u> v. <u>Acadia Ins. Co.</u>, No. 19-40155, 2021 WL 4459692, at *4-6 (D. Mass. Sept. 29, 2021).

We affirm.

**I.**

**A.   Factual Background**

Railroad owns commercial buildings in Millbury, Massachusetts, including the Building, which was located at 11 Railroad Avenue.  The Insurance Company issued a Commercial Lines Policy, No. ADV 5211789-11, to Railroad for its commercial properties; the Policy was effective from February 26, 2017 to February 26, 2018.

On November 18, 2017, the Building sustained severe fire damage.  The Insurance Company retained consultants to assist its investigation of the fire loss and the potential for subrogation claims arising from the fire loss.  On December 4, 2017, the Insurance Company determined that no viable subrogation claims existed because the fire was caused by an unidentified arsonist. Given the extent of damage, the building was determined to be a total loss and would need to be rebuilt.  On December 11, 2017, the Insurance Company paid Railroad a $25,000 advance payment.

On February 5, 2018, the Insurance Company provided Railroad's public adjuster with an estimate of the building loss. Railroad's public adjuster agreed with the estimate and reserved

the right to seek an additional $25,000 in code upgrade coverage[2] arising out of the anticipated need to install sprinklers during the rebuild. On February 22, 2018, Railroad sent the Insurance Company a Proof of Loss, which Railroad unilaterally executed. The Proof of Loss stated: (1) the Replacement Cost Value ("RCV") of repair was $808,468.13; (2) the Actual Cash Value ("ACV") was $610,928.46; and (3) after the deductible amount ($10,000) and the advance payment ($25,000), the net ACV was $575,539.67. On February 26, 2018, the Insurance Company paid Railroad the net ACV payment of $575,928.46. Under the terms of the Policy, Railroad could recover the depreciation holdback (the difference between the RCV and the ACV: $197,539.67) and the code upgrade coverage ($25,000) if it completed reconstruction of the Building within two years of the property loss.

In July 2018, Railroad demolished the damaged Building. In August 2018, Railroad began meeting with a contractor, RGN Construction ("RGN"), to "review options to reconstruct the [B]uilding." In January 2019, Railroad signed a contract with RGN for architectural and structural design services. In July 2019,

_____

[2] The code upgrade coverage under the Policy permits Railroad to recover increased costs of reconstruction "when the increased cost is a consequence of a requirement to comply with the minimum standards requirements of the ordinance or law," here, the costs of installing sprinklers.

Railroad and RGN agreed on the scope of construction for the shell of the new building.

On November 5, 2019, Railroad requested from the Insurance Company a six-month extension to the two-year rebuild requirement under the Policy. The Insurance Company did not grant an extension. Railroad and RGN began reconstruction of the building in January 2020, more than two years after the fire.

**B.      Relevant Policy Provisions**

The Building and Personal Property Coverage Form, the basic coverage form in the Policy, provides:

> 3.  Replacement Cost
>
> . . .
>
> c.  You may make a claim for loss or damage covered by this insurance on an actual cash value basis instead of on a replacement cost basis.  In the event you elect to have loss or damage settled on an actual cash value basis, you may still make a claim for the additional coverage this Optional Coverage provides if you notify us of your intent to do so within 180 days after the loss or damage.
>
> d. We will not pay on a replacement cost basis for any loss or damage:
>
> (1) Until the lost or damage property is actually repaired or replaced; and
>
> (2) Unless the repair or replacement is made as soon as reasonably possible after the loss or damage.

- 5 -

The Massachusetts Changes Endorsement, required under Mass. Gen. Laws ch. 175, § 47, clause 17, amends the Replacement Cost provision:

> D. Paragraph 3.d. of the Replacement Cost Optional Coverage is replaced by the following:
>
> d. We will not pay on a replacement cost basis for any loss or damage:
>
> (1) Until the lost or damaged property is actually repaired or replaced:
>
> (a) On the described premises; or
>
> (b) At some other location in the Commonwealth of Massachusetts; and
>
> (2) Unless the repairs or replacement are made within a reasonable time, but no more than 2 years after the loss or damage.

The Advantage Property Endorsement, which includes the provision covering the code upgrade coverage in the amount of $25,000, provides:

> (b) We will not pay for the increased cost of construction under this coverage:
>
> (i) Until the property is actually repaired or replaced, at the same or another premises; and
>
> (ii) Unless the repairs or replacement is made as soon as reasonably possible after the loss or damage, not to exceed two years.

## C. Procedural History

On November 13, 2019, Railroad filed suit against the Insurance Company in Massachusetts state court, alleging a single

cause of action for breach of contract for failing to pay the depreciation holdback and code upgrade coverage, a sum of $222,539.67. The Insurance Company removed the case to federal court based on the diversity of the parties. See 28 U.S.C. § 1441.

On October 20, 2020, the Insurance Company filed a motion for summary judgment. After full briefing, the district court granted summary judgment in favor of the Insurance Company, holding that Railroad did not satisfy the Policy's condition precedent to recover the depreciation holdback or the code upgrade coverage because Railroad failed to replace the Building within two years of the loss, as required by the clear and unambiguous terms of the Policy. R.R. Ave. Props., 2021 WL 4459692, at *4-5. The district court also held that Railroad's failure to perform was not excused. Id.

Railroad timely appealed.

## II.

### A. Standard of Review

"We review de novo a district court's grant of summary judgment." See Forbes v. BB&S Acquisition Corp., 22 F.4th 22, 25 (1st Cir. 2021). Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Santos-Rodríguez v. Seastar Sols., 858 F.3d 695, 697 (1st Cir. 2017).

**B.   Analysis**

    1.   <u>The Policy Language Is Not Ambiguous</u>.

Railroad first argues that the Policy phrases "until the property is actually repaired or replaced" and "unless the repairs or replacement are made as soon as reasonably possible after the loss or damage, not to exceed two years" are inherently ambiguous. Railroad does not explain which words in the Policy language are ambiguous or how the language could otherwise be interpreted.

Under Massachusetts law, the "[i]nterpretation of an insurance policy is a question of law to be determined by the court."  <u>Golchin</u> v. <u>Liberty Mut. Ins. Co.</u>, 993 N.E.2d 684, 688 (Mass. 2013).  "Interpretation of an insurance policy is no different from interpretation of any other contract."  <u>Citation Ins. Co.</u> v. <u>Gomez</u>, 688 N.E.2d 951, 952 (Mass. 1998).  Massachusetts courts construe the terms in an insurance policy in their "usual and ordinary sense."  <u>Hakim</u> v. <u>Mass. Insurers' Insolvency Fund</u>, 675 N.E.2d 1161, 1164 (Mass. 1997).  "A term is ambiguous only if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one."  <u>Citation Ins.</u>, 688 N.E.2d at 953.  Where policy terms are required by statute, as here,[3] "the rule of construction resolving

---

       [3]   Mass. Gen Laws ch. 175, § 47, clause 17 provides that insurance companies may:

       insure buildings . . . for the difference between the actual value of the insured

- 8 -

ambiguities in a policy against the insurer is inapplicable."
Aquino v. United Prop. & Cas. Co., 143 N.E.3d 379, 386 (Mass. 2020)
(quoting McNeill v. Metro. Prop. & Liab. Ins. Co., 650 N.E.2d 793,
795 (Mass. 1995)).

Based on its "usual and ordinary" meaning, the language
in the Policy is not ambiguous. A reasonably intelligent person
would understand that Railroad was not entitled to the depreciation
holdback or code upgrade coverage unless the damaged Building was
actually[4] rebuilt within two years of the fire damage. Indeed,
Railroad understood as much when it asked the Insurance Company
for a six-month extension to the two-year rebuild requirement on
November 5, 2019, less than two weeks before the rebuild deadline.

---

property at the time any loss or damage occurs
and the cost of repairing, rebuilding, or
replacing on the premises described in the
policy . . . if repaired, rebuilt or replaced
within the commonwealth within not exceeding
two years from date of loss or such further
time as may be agreed to between the insurer
and the insured; and also, to insure against
the . . . additional cost of repair or
reconstruction, or both, of portions of the
insured premises which have suffered damage,
necessary to comply with applicable laws,
ordinance or by-laws.

[4]    The Oxford English Dictionary first defines "actually"
as "[i]n action; in fact, in reality, really. Opposed to possibly,
potentially, theoretically, etc."    Actually, OED Online,
https://www.oed.com/view/Entry/1980?redirectedFrom=actually (last
visited May 24, 2022).

Railroad's citations to nonbinding cases from other jurisdictions do not support its arguments.[5] Those cases involve different factual situations and different policy language, such as the insured party purchasing new property as a replacement for its damaged property (rather than rebuilding), see, e.g., Pierce v. Farm Bureau Mut. Ins. Co., 548 N.W.2d 551, 552 (Iowa 1996); Batton-Jajuga v. Farm Bureau Gen. Ins. Co. of Mich., 913 N.W.2d 351, 353 (Mich. Ct. App. 2017), or the definition of the term "spend," see Northrop v. Allstate Ins. Co., 720 A.2d 879, 882-83 (Conn. 1998).

2.    Railroad Failed to Satisfy the Condition Precedent.

Railroad further argues that it satisfied the Policy's "ambiguous" condition precedent because it had "executed various design and construction contracts, legally obligating it to pay the full RCV plus code upgrades; and was in the process of rebuilding, having made substantial payments, all within two years of the loss."  Railroad also argues that there exists a genuine dispute of material fact as to whether it had "substantially complied" with the requirements of the condition precedent.

The plain language of the Policy requires that the property be "actually" -- not substantially -- repaired or

---

[5]    Contrary to Railroad's argument that there is no directly on-point Massachusetts case law, Massachusetts law requires adherence to the clear terms of the Policy. Citation Ins., 688 N.E.2d at 952-53.

- 10 -

replaced.  Where contract language is clear and unambiguous, we will not construe it against the insurer.  See Clark Sch. for Creative Learning, Inc. v. Phila. Indem. Ins. Co., 734 F.3d 51, 55 (1st Cir. 2013).

Even assuming arguendo that Railroad could demonstrate performance through substantial compliance with the Policy provisions, the undisputed record shows that Railroad had not begun -- let alone substantially completed -- reconstruction of the Building until more than two years after the fire damage.  In fact, Railroad did not begin construction of the Building until January 2020, two months after the two-year rebuild period had expired.  Railroad's executed contracts and payments alone do not satisfy the plain language in the insurance policy that the property be "actually repaired or replaced" within two years of the fire damage.

3.  <u>The Insurance Company Did Not Have an Equitable Duty to Extend the Time for Performance</u>.

Railroad separately argues that its failure to rebuild the Building within two years of the fire damage should be excused because the Insurance Company had an "equitable duty" to extend the time for performance under the implied covenant of good faith and fair dealing and the doctrines of frustration of purpose and impossibility.

Under Massachusetts law, "[e]very contract implies good faith and fair dealing between the parties to it." T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 703 (Mass. 2010) (quoting Anthony's Pier Four, Inc. v. HBC Assocs., 583 N.E.2d 806, 820 (Mass. 1991)). The implied covenant of good faith and fair dealing requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." Id. at 704 (quoting Anthony's Pier Four, 583 N.E.2d at 820). Notwithstanding, the scope of the covenant is only as broad as rights and duties under the terms of the contract. See Ayash v. Dana-Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005). "The implied covenant of good faith and fair dealing does not create rights or duties beyond those the parties agreed to when they entered into the contract." Bos. Med. Ctr. Corp. v. Sec'y of Exec. Off. of Health & Hum. Servs., 974 N.E.2d 1114, 1126 (Mass. 2012) (cleaned up) (quoting Curtis v. Herb Chambers I-95, Inc., 940 N.E.2d 413, 419 (Mass. 2011)).

Here, under the clear language of the Policy, the Insurance Company had no duty to grant Railroad's request to extend the deadline of the two-year rebuild requirement. Because the Policy language is unambiguous, we cannot vary from the text of the Policy by looking to custom and practice. See Somerset Sav. Bank v. Chi. Title Ins. Co., 649 N.E.2d 1123, 1127 (Mass. 1995) ("Absent ambiguous contractual language in the policy, custom and

practice evidence cannot be used to vary the provisions of the policy."). Thus, Railroad's affidavit that insurance companies normally grant extensions cannot alter the clear terms of the contract.

Further, the record does not support Railroad's argument that the Insurance Company violated the implied covenant of good faith and fair dealing by delaying the reconstruction of the property. To the contrary, the undisputed record demonstrates that the Insurance Company acted promptly to inspect the damaged property and completed its subrogation investigation by December 4, 2017, less than a month after the fire. And the Insurance Company provided Railroad with the agreed-upon net ACV payment in February 2018, three months after the fire and 21 months before the two-year reconstruction deadline.

Likewise, Railroad's failure to perform cannot be excused by the doctrine of impossibility.[6] Under Massachusetts

---

[6] Railroad did not argue the doctrines of frustration of purpose or impossibility before the district court. Railroad raises these arguments for the first time on appeal. These arguments are thus waived. See United States v. Rodrigues, 850 F.3d 1, 13 n.6 (1st Cir. 2017).

In any event, Railroad's failure to perform cannot be excused by the doctrine of impossibility for the reasons set out below. The doctrine of frustration applies "when an event neither anticipated nor caused by either party, the risk of which was not allocated by the contract, destroys the object or purpose of the contract, thus destroying the value of performance." Chase Precast Corp. v. John J. Paonessa Co., Inc., 566 N.E.2d 603, 605-06 (Mass. 1991). Railroad provides no argument about what "object or purpose of the contract" was frustrated and fails to develop any argument

law, the doctrine of impossibility excuses a failure to perform where the contracting parties assumed "the continued existence of some particular specified thing as the foundation of what was to be done," and "performance becomes impossible from the accidental perishing of the thing without the fault of either party." Chase Precast Corp. v. John J. Paonessa Co., Inc., 566 N.E.2d 603, 605 (Mass. 1991) (quoting Bos. Plate & Window Glass Co. v. John Bowen Co., 141 N.E.2d 715, 717 (Mass. 1957)).

If the condition precedent were impossible to perform within the two-year period, then Railroad's failure to perform could be excused. However, the doctrine of impossibility does not apply here because the record clearly demonstrates that Railroad's performance was not impossible, nor were any of the delays in reconstruction unforeseen. The damaged Building was demolished in July 2018, and Railroad had sixteen months remaining to complete its four-month reconstruction project. Railroad itself did not review the options to reconstruct the building with RGN until August 2018, did not sign the contract with RGN until January 2019, and did not agree on the scope of the replacement Building until July 2019.[7]

---

as to this doctrine. "[W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

[7] Railroad's argument that Covid-19 shutdowns excuse its

4.    <u>The Proof of Loss Was Not a Separate Contract</u>.

Railroad lastly argues that the Proof of Loss that it submitted to the Insurance Company, which did not contain the two-year reconstruction requirement for recovering the depreciation holdback and the code upgrade coverage, modified the terms of the Policy to eliminate the condition precedent.

Not so.  Railroad's Proof of Loss form was not an independent contract that modified the condition precedent in the Policy.  The Proof of Loss, which was executed by Railroad unilaterally, states that "[t]he furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights."  It is clear that the purpose of the Proof of Loss was to provide the Insurance Company with information pertaining to the formal claim of damages -- not to modify the terms of the Policy. <u>See</u> 13 <u>Couch on Insurance</u> § 186:22 (3d ed. 2021) ("[T]he purpose of a proof of loss is . . . to advise the insurer of facts surrounding the loss for which claim is being made and to afford the insurer an adequate opportunity to investigate, to prevent fraud and imposition upon it, and to form an intelligent estimate of its rights and liabilities before it is obliged to pay.").

---

failure to perform also is without merit.  The Policy required that Railroad rebuild the Building by November 2019, four months before the initial Covid-19 shutdowns in the United States.

**III.**

<u>Affirmed</u>.